(No. 32359.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PENNY LASTER, Plaintiff in Error.

*Opinion filed September 17, 1952—Rehearing denied Nov. 17, 1952.*

GEORGE M. CRANE, JOSEPH E. CLAYTON, JR., and LAWRENCE A. BERMAN, all of Chicago, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, ARTHUR F. MANNING, and WILLIAM J. McGAH, JR., all of Chicago, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Penny Laster, hereafter referred to as defendant, was convicted in the criminal court of Cook County of the crime of murder, and her punishment was fixed by the jury at imprisonment in the penitentiary for 14 years. Motion for a new trial was overruled and the court entered judgment on the verdict. The cause is here by writ of error, and the defendant complains that she did not have a fair and impartial trial, that she was not proved guilty beyond a reasonable doubt, that the court erred in admitting prejudicial evidence against her on behalf of the People, and that the court erred in calling Mickey Smith as a court's witness and in allowing the State's Attorney to cross-examine the witness on immaterial and prejudicial matters.

The evidence on behalf of the People consists of the testimony of Minnie Mae Taylor, also known as Minnie Mae Williams, and police officer Lawrence O'Keefe, as well as a stipulation relative to a criminal complaint made by Minnie Mae Williams in the municipal court of Chicago against Sam Laster, husband of the defendant. This stipulation was relative to a complaint registered in the Chicago office of the housing expediter as to the amount of the rental at 25 South Winchester Avenue, which was finally adjusted at $20 a month, whereas the rent being paid for that apartment was $20 per week, and also a stipulation that the coroner's physician would testify that the deceased,

Charles Williams, came to his death as the result of stab wounds of the chest.

The defendant's evidence consisted of the testimony of the defendant and that of her brother, Lester Smith, who corroborated her to some extent. In addition, several witnesses testified to the good reputation of the defendant for being a peaceable and law-abiding citizen, and two witnesses testified that the reputation of the deceased in that regard was bad.

Sam Laster and Penny Laster, his wife, owned the apartments located at Nos. 23 and 25 South Winchester Avenue. Penny collected the rents of the apartments at No. 23 and Sam collected the rents of the apartment at No. 25. Minnie Mae Taylor (or Williams) and her common-law husband, Charles Williams, lived in the basement apartment at 25 South Winchester and Lester Smith, a brother of the defendant, and his family lived in the basement apartment at 23 South Winchester. When Minnie Taylor moved into the apartment at 25 South Winchester, in the fall of 1948, she filed a complaint with the office of the housing expediter and the rent was reduced.

According to the testimony of Minnie Taylor, Sam Laster came into their apartment at No. 25 on July 1, 1950, about 7 o'clock in the morning, to collect the rent. Williams was not there when he came in, but as he started to leave he met Williams coming in the door. Minnie was crying and Charles told Laster, "I don't want you to come in the house while I am gone, with my wife any more. If there is anything you want to say, you can say it to me." Laster drew a pistol on him and told him, "Don't say anything else."

Minnie Taylor further testified that on July 26, 1951, about 5:30 P.M., she and Charles Williams were in the apartment at No. 25. She was sitting on the bed and Williams was at the window picking his face with a needle. Penny Laster came in and said to him, "Have I ever done

anything to you?" Then she said to the witness, "Minnie, have I ever done anything to you?" She told her that she had not. Then Penny said to Williams, "Did Sam come in here the first day of July and draw a pistol on you?" Both the witness and Williams said he had and Penny said, "For what?" Charles said, "Because he came in the house over my wife." Penny said, "He didn't draw a pistol." Charles said, "Yes, he did. What do you know, you wasn't here." Penny said, "I know he didn't." Charles got up from the window and walked over to where Minnie was sitting and handed her the needle and the defendant said, "Charles, I didn't rent this place to you." He said, "What do you mean, you didn't rent the place to me? You have been taking my money ever since I moved in here." She then struck him with a knife on the left side and he ran out the back door. Then she stabbed Minnie in her left arm, on the inside of the left thigh above the knee, and on the outside of the left thigh, just below the hip. Minnie ran out of the back door and down to a grocery store at Walcott and Monroe and called the police. Then she came back home. She testified that on the way home she met the police in the alley and officer O'Keefe went into her apartment with her. She showed him where she was sitting when she got cut. The police took her into the apartment at 23 South Winchester, where the Lester Smith family lived. She saw no one there, and she didn't see anything unusual there, except that they hadn't cleaned up the dinner dishes. The evidence also shows that on July 10, 1950, the defendant served a notice to move on Minnie Taylor and on July 21, 1950, Minnie Taylor filed a complaint in the municipal court against Sam Laster, and a warrant was issued thereon charging him with disorderly conduct on July 1, 1950. On July 26, 1950, hearing on the warrant was postponed to July 31. This evidence was introduced as tending to show a motive for the crime, the theory being that the Lasters had become hostile toward Williams and

his common-law wife because they had their rent reduced from $20 a week to $20 a month. Evidence that the defendant served an eviction notice on Minnie Williams and her common-law husband on July 10, and that defendant's husband pulled a gun on Williams on July 1, was introduced as corroborative of that theory.

The defendant's contention is that whatever trouble there was between her and the deceased on July 26, 1950, occurred in the basement home of her brother at 23 South Winchester, and not in the apartment at 25 South Winchester, where the deceased and his common-law wife lived. The defendant testified that she went to her brother's apartment about 5 o'clock in the evening of July 26 and that her brother and two of his children were there eating supper. She said her sister-in-law, Mickey Smith, was not there. She said they had roast pork on the table and she asked if she could have a piece and her brother told her she could and she sat down at the table, got a knife and cut a piece of pork for herself; that about this time Charles and Minnie Williams rushed in and began an assault on her. She said that Williams grabbed her by the hair and pulled her from the chair and threw her on the floor, saying, "Penny, I told you I would get even with you." She said he was choking her and that Minnie was hitting her on the head and that she was fighting and kicking to keep Williams from killing her, and that while she was fighting him she had the knife in her hand. She testified that as soon as Charles and Minnie left the apartment she ran out to her automobile, and drove down to the Warren Avenue police station. She said that when she got to the police station she told the policeman there that she wanted to get a warrant for Charles Williams and Minnie Taylor; that they had jumped on her at her building. She testified that the fight in her brother's apartment lasted only two or three minutes and that, after Charles and Minnie left, she left.

She said her brother was sitting across the table from her while the fight was going on.

There is a wide difference between her testimony as to what she said at the police station and the police officer's testimony as to what she said there. Officer O'Keefe testified that he was present when the defendant came in to the Warren Avenue police station and spoke to the desk sergeant; that she did not at any time tell the desk sergeant she wanted a warrant for two people who had beaten her up; that what she said was that she thought she had cut two people during an argument over at her place on Winchester Avenue.

The defendant's brother testified that he saw his sister on July 26, 1950, between 5:00 and 6:00 P.M., when she came to his apartment. He was eating supper, and after asking if she could have some, she sat down to eat. Just then Charles Williams and Minnie Williams came in, threatened her, and they began fighting. He moved his three children into the bedroom and by that time the fight was over. He said his sister then left for the police station and he went to work. He was unaware a cutting had occurred until the police told him.

There is no dispute that the defendant killed Charles Williams. The only dispute is as to whether the homicide was willful and deliberate or whether it was committed in self-defense. The principal contention made by defendant as to why the judgment of conviction should be reversed is that the trial judge called Mickey Smith as a court's witness and permitted the State's Attorney to cross-examine her as to a statement she made and signed at the police station on the night of the killing. On cross-examination Mickey Smith denied she had said at the police station that she was at home at 23 South Winchester with her common-law husband, Lester Smith, and children between 5 and 6 o'clock on the evening of the homicide; denied that she

had said that her sister-in-law, Penny Laster, was not there during that time; denied that she had said that Charles Williams and Minnie Williams (Taylor) were not there during that time; and denied she had said that nothing unusual occurred during that period, and that the last time she saw Penny Laster was at 2:30 that afternoon at the witness's apartment. Her signed statement was then introduced in evidence and it showed that she had made these statements. The cross-examination of this witness and the admission of her written statement to the contrary of what she testified to on cross-examination were admitted in rebuttal, upon the theory that they contradicted the defendant's claim that the cutting occurred in the apartment of her brother, Lester Smith, at 23 South Winchester. Defendant seeks a reversal on the ground that this was error. She contends that the calling of Mickey Smith as a court's witness was over her objection and that the cross-examination of that witness by the State's Attorney and the admission into evidence of Mickey Smith's written statement made on the day of the homicide constituted prejudicial error.

It will be noted that in the abstract defendant shows the following: "Mickey Smith, called as a court's witness, over objection by the defendant, testified as follows:", and in her argument she says, "The Court erred in calling Mickey Smith as a court's witness over defendant's objection," and "The court erred in allowing the State's Attorney to cross-examine on immaterial and prejudicial matters and to engage upon a course of advance impeachment of the court's witness," but the record does not show any objection. Counsel for plaintiff in error has set out in his brief what is shown by the record. The court asked if there was any rebuttal and the assistant State's Attorney, who was trying the case, told the court he would like to call Mickey Smith as a court's witness in rebuttal. The court asked if there was any objection. Counsel for plaintiff in

error did not make any objection; he merely stated that he thought the State's Attorney should call her as his own witness. Some further discussion by the court and the assistant State's Attorney followed, but nothing further was said by counsel for plaintiff in error, and when the court announced that the State's Attorney's request would be allowed, counsel for plaintiff in error voiced no objection. After a few questions by the trial judge, the witness was turned over to the State's Attorney for cross-examination. The record shows two objections by counsel for plaintiff in error during the cross-examination by the State's Attorney. The witness was asked, "Did you ever tell anyone you saw your sister-in-law, Penny Laster, at 2:30 P.M.?" and the witness answered, "I don't remember." Counsel for plaintiff in error then said, "I object to that Judge. There is rebuttal. There is no testimony that she told anyone that she saw her at 2 o'clock." The witness had already answered and counsel for plaintiff in error did not move to exclude her answer and did not ask for an instruction to the jury to disregard the answer. The only other objection to the State's Attorney's cross-examination is found on page 130 of the record. The State's Attorney had asked the witness whether she had made a certain statement, the time and place being fixed, and she had answered, "I don't remember, sir." Then the following question was put, "Now, was this question asked of you and did you make this answer?" At this point counsel for plaintiff in error interposed the following objection: "I am going to object to all of this. This is no rebuttal so far of anything that has been said here. This is a witness called in rebuttal." The objection was overruled and the witness said, "No, I don't remember."

Mickey Smith was called as a court's witness at the request of the State's Attorney who stated that according to his information she should be an eyewitness but that he could not vouch for her credibility. The rule permitting

the court to call an eyewitness was announced in *Carle* v. *People,* 200 Ill. 494, where it was said that when a State's Attorney knows that a witness was present at the scene of a crime, but he has no confidence in the witness or doubts his veracity or integrity, he is not obliged to call such witness. Then the court may call the witness, leaving him open for cross-examination by either side. We later announced that this rule should be confined within narrow limits, being adopted only where it is shown that otherwise there might be material injustice. (*People* v. *Johnson,* 333 Ill. 469.) Defendant claims in her petition that she objected to Mickey Smith's being called as a court's witness and being cross-examined by the State's Attorney. No such objection appears in the record filed with this court.

Defendant complains that the admission of Mickey Smith's written statement into evidence amounts to prejudicial error. Again, the record fails to disclose any objection raised by defendant to the admissibility of this evidence. The record does show, however, that defendant's counsel fully cross-examined the witness on all matters brought out on examination by the State's Attorney, including this written statement. It is fundamental that evidence introduced in the trial court, to which no objection is made, cannot be complained of for the first time on appeal. (*In re Estate of Fisher,* 409 Ill. 420.) Defendant cannot, therefore, be heard to complain on these grounds. Neither can she complain that the jury was not properly instructed as to the proper application of much of this testimony, where she offered no instructions setting forth the purposes for which such testimony might be considered. *People* v. *Weisberg,* 396 Ill. 412.

Defendant cites numerous cases in support of her contentions regarding the court's witness, all of which are patently distinguishable. A discussion of them here would

only serve to unduly lengthen this opinion without adding materially to its worth.

The story of the fatal occurrence as told by the defendant is fantastic and illogical. It is difficult to believe the story of her brother, that while his sister was engaged in a death struggle with two assailants determined to kill her, he sat across the table from her, eating his supper, never raising a finger or protesting. The testimony of Mickey Smith, where material to the occurrence, was not prejudicial but had the effect of bolstering defendant's tale. On this record, the jury was justified in finding that the fatal stab wound was not inflicted in self-defense, although it evidently believed there were circumstances which should mitigate the punishment. Consequently, it fixed the penalty at the minimum term allowed by law. The court did not err in entering a judgment of conviction on the verdict. Accordingly, the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*