(No. 36888.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CLEO PAUL SONGER, Plaintiff in Error.

*Opinion filed September 27, 1963.*

KENNETH F. RITZ, of Rockford, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and WILLIAM R. NASH, State's Attorney, of Rockford, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and WILLIAM H. SNIVELY, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The defendant here, Cleo Paul Songer, and a co-defendant, Helbert Eugene Sanner, were jointly indicted and tried before a jury, in the circuit court of Winnebago County, on a charge of burglary and found guilty. Songer, herein referred to as defendant, was sentenced to the penitentiary for a term of not less than 5 nor more than 15 years.

The record discloses that on November 22, 1960, at about 3 o'clock A.M., a signal was received at the ADT burglar alarm system office in Rockford, indicating that there might be trouble at the Forest City Liquor Co. store. Thereupon the police who went there found Helbert Sanner and one Wallace Hale, who is not a party to the cause here, on top of the roof. Sanner was at the west edge of the roof attempting to climb down. Hale was near the skylight, as were various tools including a drill, sledge hammer and screwdriver.

The skylight and a wooden grating located 33 to 36 inches below the skylight had been broken. A portion of the grating, which consisted of thin wood with wire running about it, was found on the roof. These wires, when broken, set off the alarm system. The building contained a safe, money and a large supply of whiskey.

The defendant was first noticed by the police in the alley below as he ran through a passageway between the liquor company and the adjacent building. The officer testified that when the defendant saw him, he jumped back

into the passageway. He was later found by the police lying face down on a landing of an adjacent building.

Hale, who was also indicted in another indictment for the crime here, pleaded guilty to the offense and testified at the trial as a court's witness. He admitted that the tools found on top of the roof belonged to him, but claimed that they had been stolen from his car on the night of the occurrence. He further testified that he suspected two individuals, whom he identified simply as "Tony" and "Bill," had taken these tools and were going to use them in a burglary. Consequently he began to search for Tony and Bill, and observed them on top of the liquor store. He there fought with them when they refused to return the tools. About this time Sanner, whom Hale had previous asked to help in the search of the tools, was returning to his home which was in the vicinity of the liquor store and observed Hale fighting. He thereupon went up on the roof to help him. According to Hale, the police then arrived, and Tony and Bill jumped off the roof and escaped. Hale and Sanner were arrested. Sanner's testimony was substantially the same as Hale's.

The defendant testified that as he was walking past the liquor store, which was near the hotel where he was staying, he noticed a number of cars, suspected something was wrong, and decided to investigate. Thereupon, several policemen carrying shot guns came at him from every direction, and, as a result, he became frightened and ran through a small passageway. He there encountered a police officer, turned around and climbed up to a landing on an adjacent building where the police found him.

A police officer testified that shortly after the arrest, Sanner, while being questioned at the police station, admitted that at the time of their apprehension he, Hale and the defendant were looking the place over to burglarize it. This statement was admitted into evidence without objec-

tion as a part of the State's case in chief against both defendants. However, the defendant now contends that this statement should have been admitted and considered by the jury only as to the co-defendant Sanner. This objection comes too late. (*People* v. *Nixon*, 371 Ill. 318; *People* v. *Laster*, 413 Ill. 224; *People* v. *Perez*, 412 Ill. 425; *People* v. *Villalobos*, 20 Ill.2d 315.) At the trial Sanner, Hale and the defendant all testified that the defendant in no way participated in the burglary and was not even aware of the presence of Sanner and Hale in the neighborhood. However, written statements signed by Hale and Sanner that implicated the defendant in the crime were subsequently introduced into evidence for impeachment purposes without objection.

The Criminal Code provides that "Whoever wilfully and maliciously and forcibly breaks and enters, or wilfully and maliciously, without force (the doors or windows being open), enters into any dwelling house, * * * or other building, with intent to commit murder, robbery, rape, mayhem, or other felony or larceny shall be deemed guilty of burglary." Ill. Rev. Stat. 1961, chap. 38, par. 84.

The defendant here contends: (1) that there was insufficient evidence to support the judgment of conviction as to him in that it was not proved that he was acting in concert with Sanner and Hale or that he in any way assisted them in breaking into the liquor store; and (2) that there was no evidence to show that an entry was made within the meaning of the burglary statute. The defendant does not here question the felonious intent on the part of Hale and Sanner in breaking the skylight and in fact concedes the sufficiency of the evidence as to them.

The defendant argues that at most the competent evidence against him consists only of his being seen in the passageway adjacent to the liquor store and of his attempting to hide upon seeing the police. This he contends raises little more than a suspicion against him and falls far

short of proof beyond a reasonable doubt of his participation in the burglary. We cannot agree with this contention.

The record discloses that the defendant had been well acquainted with Hale and Sanner for sometime. The defendant claimed that he had not seen Hale since his return to Rockford from Arkansas, which he claimed was in November of 1960, until after the burglary. Hale's wife, however, testified that in October of 1960 the defendant came to their home in Rockford and visited with her husband. The defendant claimed that he was at the scene of the burglary, committed at 3 o'clock A.M. by two of his friends, whom he claimed he had not seen for several months, simply by chance while he was returning to his hotel room. He further testified that he was attracted to the liquor store from the other side of the street by the large number of cars and because of his feeling that something was wrong. However, the sight of the police officers so frightened him that he began to run in order, so he claimed, to find someone to identify him. However, when he did encounter an officer he did not offer an identification, but instead turned around, ran in the opposite direction and hid on the landing of an adjacent building. As we stated in *People* v. *Davis*, 27 Ill.2d 33, "When a defendant elects to justify or explain his presence at or near the scene of a crime, while denying participation, he must tell a reasonable story or be judged by its improbabilities." The question of whether or not to accept this explanation was for the jury and we can see no reason why their determination should be set aside in this case. The aforementioned evidence in our opinion fully supports the conclusion that the defendant was a participant in the burglary along with Hale and Sanner.

The defendant next contends that there was not a sufficient entry into the building within the meaning of the above statute. The skylight window, located above the

warehouse or open stock room of the building, and a wooden grating some three feet below this window, were both broken out. The grating was for the purpose of supporting the alarm system wires and was made out of thin pieces of wood, which when broken and removed made the way clear to climb down into the building itself and left no further physical obstruction. In fact an entry into the building at least to the extent of three feet would have been necessary in order to reach in and remove the wooden grating. In *People v. Urbana,* 18 Ill.2d 81, relied upon by defendant, entry into the building itself was still barred by a steel door despite the removal of an outer gate. In our opinion there was a sufficient entry into the building to justify a finding of guilt under the above statute.

Accordingly, the judgment of the circuit court of Winnebago County is affirmed.

*Judgment affirmed.*