**People of the State of Illinois, Plaintiff-Appellee, v. Claude Eugene Gooch, Defendant-Appellant.**

**Gen. No. 50,296.**

First District, First Division.
April 25, 1966.

Thomas J. Boodell, Jr., of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Zagel, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a bench trial, defendant was convicted of burglary and sentenced to the penitentiary for a term of one to three years. On appeal, defendant contends that the evidence did not establish his guilt beyond a reasonable doubt in that (1) identification of the defendant was weak and uncertain; (2) the evidence as to the nature of the premises and the alleged entry are confusing and unconvincing; and (3) the State has failed to prove the "intent to commit [the crime of] theft." .

In substance, on the afternoon of September 4, 1964, four men ran out of an open door at the rear of an auto accessory store, and defendant was identified as being one of the four men. The door had been forcibly opened, and apparently nothing was taken. Nothing was found on the defendant. The second and third floors of the building were vacant and abandoned, and defendant was found on the third floor. He said he had been looking for a washroom and denied entering the store.

The principal witness for the State was Henry Poile, an employee of the Kedzie-Kane Alarm Company. He testified that on September 4, 1964, he went to 2848 West Madison Street, a 3-story building, to answer an alarm signal. The alarm was about 3:24 p. m. The front of the first floor was occupied by an auto accessory store owned by Leonard Nathan. The rear of the first floor and the entire second and third floors were abandoned. Poile arrived at the building at 3:29 p. m. and pulled into an alley behind the building. As he started to leave his car, he saw four men run out of a door at the rear of the premises. The men ran upstairs at the rear to the second floor. He was approximately 30 feet away when he first observed the defendant, who was one of the four men. Defendant was the third man on the stairs. All four men entered the second floor. Poile then went to the open rear door to block the exit. Five minutes later, he saw

the defendant in custody of the police and identified him as one of the men he saw earlier.

The store owner, Leonard Nathan, testified that at approximately 3:30 p. m., he received a call and went to his store. He went to the back and "saw that the building had been broken into in my portion of the premises; the door had been battered down and was broken down. . . . You could see the splinters that had been forcibly entered." He did not keep an inventory, "but from the time that the place had been broken into until the time I had gotten there, there is not much that could have been taken."

The arresting officer, Howard Blair, testified that he arrived at the premises at 3:35 p. m., and after a conversation with Poile, he went up the rear stairs to the second floor, then to the third floor, where he found the defendant in a bedroom, crouched in a corner. The second and third floors of the building were abandoned and completely dilapidated. Defendant said he had been to a washroom. The officer further testified there was no toilet in the area, nor any indication that defendant had used the premises for a washroom. On cross-examination, he testified he did not find the other three men. No stolen property was found on the defendant. After arresting the defendant, "I showed him to Mr. Poile and Mr. Nathan and Mr. Poile identified him as one of the men that had fled the scene as he arrived." The officer saw no one leave the building after he arrived.

Defendant testified that on September 4, 1964, he had been working in a garage for "Fred Smith," at 2748 West Madison, and at about 2:30 p. m., he went to a restaurant to get a hamburger. On his way back to Madison and California, he was going through an alley and his stomach was hurting. "And I just walked on down the alley and then I had to use a washroom, I remember this condemned building because my girl friend used to live up there, . . . . [T]here is a washroom on the third

floor and then I went in the washroom and when I went in the washroom I do what I had to do and I got through and I was coming out I heard some noise, I got scared and I ran in the corner. . . . And then after I stooped down about three minutes later the police officer came up and told me to get up, I was under arrest. . . . I heard something like somebody cracking glass or something." He also said that prior to the time he saw Officer Blair, he had seen Poile when he (defendant) was standing on the back porch of the building for about 15 to 20 minutes. He did not see "any commotion going on on the first floor nor men running through the building," and he was alone.

On cross-examination, he said that the back door of 2848 West Madison was open, and "I went to the first floor, then I came out the first floor and I went up to the second floor and then I came out of there and I went to the third floor," and as to the plumbing facilities on the third floor, "the water wasn't running." He was in the toilet room about 20 minutes and recalled that while he was standing on the back porch, he saw a tall man standing by a red car.

In finding defendant guilty, the trial court expressed at length disbelief in defendant's explanation as to why he was in the building, and remarked, "He went in the building originally to find a toilet but it took him fifteen minutes to find a toilet, stands on the porch and then he goes up in the building and he finally finds the toilet—I just don't believe his story. . . . But this young man's story is incredible, it's incredible."

Defendant argues that the evidence of the State is not of a convincing character and that there is reasonable doubt of the guilt of the defendant; that the identification was vague and uncertain; that the testimony was confusing as to where "the alleged break occurred," and "the facts are such as to negate the specific intent to commit larceny."

■■ We are not persuaded that the identification of defendant was vague and uncertain. The identification of defendant by Poile was made on the premises, in daylight, and within a few minutes after the occurrence. He said that when the men ran out of the first floor, "I saw them come towards me, turn at a right angle and go up the stairs," and defendant "was the third man on the stairs until the larger man behind him reached up and grabbed him, pulled him out of the way and went up ahead of him. So he was the last man then on those stairs." He saw defendant's face "just a matter of seconds. I saw four of them come up; I saw the side of his face as he was going up the stairs and then I saw him when the man behind him pulled him out of the way to get by." Poile was then about 25 feet away. The identification by Poile, in addition to the arrest of defendant on the third floor of the premises, all within a short period of time, was sufficient proof of defendant's identity as one of the four men who ran from the premises. Poile's identification was positive, and it is not disputed that defendant was found in the building. The testimony of one witness alone, if it is positive and the witness credible, is sufficient to convict, even though the testimony is contradicted by the accused. People v. Cox, 22 Ill2d 534, 539, 177 NE2d 211 (1961).

Defendant further argues that "specific intent is an essential element of the crime of burglary and must be proved by the State. . . . there is grave doubt that any specific intent has been shown," and cites in support People v. Hutchinson, 50 Ill App2d 238, 200 NE2d 416 (1964), and People v. Soznowski, 22 Ill2d 540, 177 NE2d 146 (1961).

■■ We agree that "the intent to commit the crime of theft" was an essential element of the State's case, to be proved beyond a reasonable doubt. The gravamen of the offense of burglary is the intent with which the building is entered. (People v. Myler, 374 Ill 72, 28 NE2d 83

129

(1940).) The crime of burglary is complete upon the entering with intent to steal, and it is not essential to allege or prove that anything was taken. (People v. Figgers, 23 Ill2d 516, 179 NE2d 626 (1962).) Intent may be inferred from the proved facts and circumstances (People v. Niksic, 385 Ill 479, 483, 53 NE2d 400 (1944)), but, it is essential to a conviction upon circumstantial evidence that the facts proved be not only consistent with the defendant's guilt, but that they be inconsistent, upon any reasonable hypothesis, with his innocence. People v. Wilson, 400 Ill 461, 473, 81 NE2d 211 (1948).

The facts in the instant case are distinguishable from People v. Soznowski and People v. Hutchinson. In the Soznowski case, the defendant, "while in the apartment and without doing anything to indicate the purpose of theft, beat a sleeping woman until she awakened. This act in itself appears inconsistent with an attempt to steal." In the Hutchinson case, the defendant in mid-afternoon, "overtly parked his own car, which bore his own license plates, directly in the rear of the home he entered, in full view of two men, without any apparent attempt at disguise, and then left the home in an orderly manner." There, this court said (p 242):

> "We believe these facts are sufficient to raise a reasonable doubt of the guilt of defendant and require the application of the 'maxim of our law that where an act may be attributed to a criminal or to an innocent cause it will be attributed to the innocent cause rather than to the criminal one.' "

In the instant case, defendant, a mechanic employed in a neighborhood garage, was identified as one of four men who ran from an auto accessory store, the door of which had been battered down and forcibly entered. A few minutes later he was found crouched on the third floor of the same building, reached by a stairway, on which he was seen running.

■ In People v. Johnson, 28 Ill2d 441, 192 NE2d 864 (1963), the Supreme Court, in upholding a jury verdict for the conviction of burglary said (p 443):

> "Intent must ordinarily be proved circumstantially, by inferences drawn from conduct appraised in its factual environment. We are of the opinion that in the absence of inconsistent circumstances, proof of unlawful breaking and entry into a building which contains personal property that could be the subject of larceny gives rise to an inference that will sustain a conviction of burglary. Like other inferences, this one is grounded in human experience, which justifies the assumption that the unlawful entry was not purposeless, and, in the absence of other proof, indicates theft as the most likely purpose. This conclusion is supported by the decisions of other courts . . . ."

■ ■ These pronouncements apply here. The "absence of other proof," a believable reason for defendant's being on the premises, indicates that theft was the most likely purpose. The credibility of witnesses and the weight to be given their testimony is for the trial court, who saw and heard the witnesses testify, and the trial court here resolved the conflict in testimony against the defendant by concluding that defendant's explanation as to why he was found in the premises was "incredible." In People v. Boney, 28 Ill2d 505, 192 NE2d 920 (1963), the court said (p 510):

> "Because a trial court as the trier of fact is peculiarly suited to determine questions of truthfulness, a reviewing court will not readily substitute its own conclusion, . . . unless the proof is so unsatisfactory as to justify a reasonable doubt of guilt."

131

■■■■■■■■■■
■■■■■■

■ From our review of this record, we find that the defendant had a fair trial and his guilt of the crime of burglary was proved beyond a reasonable doubt.

The judgment of the Criminal Division of the Circuit Court of Cook County is affirmed.

Affirmed.

KLUCZYNSKI, P. J. and BURMAN, J., concur.