THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JERRY B. PALMER, Defendant-Appellant.

Fourth District   No. 15882

Opinion filed April 25, 1980.

Craig H. Greenwood, of Bloomington, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Gary J. Anderson and Karen L. Boyaris, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

The defendant, Jerry B. Palmer, was tried by jury in the circuit court of McLean County on two counts of burglary. He was convicted of one count and acquitted on the other and then sentenced to 5 years' imprisonment. On appeal he asserts (1) the evidence was insufficient to show his entry into the allegedly burgled premises, and (2) the court erred in ruling on instructions.

An information filed March 13, 1979, charged the defendant with two counts of burglary (Ill. Rev. Stat 1977, ch. 38, par. 19—1), each alleged to have occurred on February 4, 1979. The conviction arose from count I. It charged that the defendant entered without authority part of a building occupied by Theresa Coppenbarger, her son, and Steve Steilow, with the intent to commit therein "a theft or felony." Count II charged that the defendant entered without authority a building owned by the Corn Belt Bank, as trustee of McLean County Land Trust No. 1179, with the intent to commit therein "a theft or felony."

Most of the evidence in support of the conviction came from the testimony of Theresa Coppenbarger, who related the following occurrence. On February 4, 1979, she was living in the apartment in question. About 9:30 that evening, she heard a knock on the door; when she looked out the peephole, she saw a man she did not recognize. Because Steilow was not there, she decided not to answer the door. The man left and walked down the hallway, returning in several minutes and again knocking on the door; when no one answered, he left. About two or three minutes after that, Coppenbarger again heard a knock at the door. She looked out and saw the same man as before. This time the man stood at the side of the door as if he thought he would not be seen. The man then went out a back door at the end of the hallway, where a removable panel in the ceiling provided access to the attic of the building.

Directly after the man left, Coppenbarger heard loud noises in the hallway outside the living room as if somebody were beating or kicking the wall. When she next heard someone in the attic above her, she called the police. Fearing that the man wanted to rob her, as someone had done earlier by coming down from the attic through a trapdoor in the bedroom closet, she got a gun for protection. Then, while standing in the hallway of her apartment, she saw a fist pounding a hole through the kitchen ceiling. The defendant first stuck his face through a hole 10 to 12 inches in diameter and then the rest of his head and his arms past the elbows. Coppenbarger screamed that she would shoot the defendant if he kept beating on the ceiling. She shot the gun, intending only to scare him. As a result, the defendant fell halfway through the hole and then jumped onto a table in the kitchen.

After the man fell through the ceiling, Coppenbarger kept repeating

to him that she would shoot him. The man told her not to do it and said, "I'm just looking for my friend's house." She went over to the front door, opened it, and shouted for the defendant to leave. On cross-examination, Coppenbarger said that the defendant did not attempt to take anything and did not threaten her.

The defendant stipulated that he was the person shot by Coppenbarger on February 4, 1979. The evidence was undisputed that no one had any permission to be in the attic of the apartment building or to enter a resident's apartment without the resident's permission.

A Bloomington police officer testified that when he arrested the defendant in Peoria on February 5, 1979, he found a screwdriver, a knife, and a green garbage bag in defendant's coat. The officer further stated that the next day the defendant told him that he went to the apartment building attic to get insulation and had already hidden two bags of insulation in Miller Park. The officer testified to searching the park for bags of insulation and finding none.

For the defense, Joyce Palmer, the defendant's wife, testified that the defendant frequently brought home plastic bags from his job as a custodian. She said he did so because when he started work at 6:45 a.m., the closet in which the bags were kept was locked and he did not have the key.

Section 19—1 of the Criminal Code provides: "(a) A person commits burglary when without authority he knowingly enters * * * a building * * * with intent to commit therein a felony or theft." (Ill. Rev. Stat. 1977, ch. 38, par. 19—1.) The offense is complete upon entering with the requisite intent. The actual commission of the intended offense is irrelevant. Breaking, in the common law sense, is not an element of burglary. (*People v. Weaver* (1968), 41 Ill. 2d 434, 243 N.E.2d 245.) The defendant argues that his pounding a hole in the kitchen ceiling and putting his arm and head through was only a breaking. He maintains that he did not enter the apartment until he fell through the ceiling *as a result of Coppenbarger's shot* and that this entry was unintended. The State contends that the intrusion of parts of defendant's body through the ceiling prior to the shot constituted a sufficient entry to be the basis of an act of burglary. There is no dispute that the circumstantial evidence presented was sufficient for the jury to have found that the defendant intended to commit a burglary.

The defendant's authorities are distinguishable from the situation here. In *People v. Urbana* (1959), 18 Ill. 2d 81, 163 N.E.2d 511, a defendant charged with and convicted of attempted burglary argued that he was guilty of burglary only and that the attempt was not an included offense. The defendant had broken through a metal grating and was

caught while trying to pick the lock on the rear door of a store. The court said that presence in the small area between the grate and the door was not entry of the building because the door defined the close of the store. In the instant case, however, portions of the defendant's body penetrated the hole in the ceiling and intruded into the kitchen. The ceiling, analogous to a door, defined the close of the apartment here.

*People v. Davis* (1972), 3 Ill. App. 3d 738, 279 N.E.2d 179, is more similar factually but still distinguishable. In *Davis*, the police watched the defendant and three other persons use tools to pound a small hole in the wall of a store; the hole was large enough to permit one to see inside. The pounding caused bits of plaster to fall inside the store. The police saw the four men leave, taking nothing. No indication was given that any part of the bodies of any of the four had penetrated the hole. Discussing whether the defendant had entered the store, the court said: "It is not the size of the hole that is determinative but rather, in our opinion, it is whether a hand or instrument was actually inserted into the hole for the purpose of committing the felony." (3 Ill. App. 3d 738, 739, 279 N.E.2d 179, 180.) The appellate court found no entry to have occurred and reduced the defendant's burglary conviction to one for attempted burglary.

On the other hand, in *People v. Songer* (1963), 28 Ill. 2d 433, 192 N.E.2d 861, the supreme court affirmed a conviction for burglary where the evidence showed that one for whom the defendant was accountable had broken a skylight on a store roof and removed a wooden grate below. The court stated:

> "The grating was for the purpose of supporting the alarm system wires and was made out of thin pieces of wood, which when broken and removed made the way clear to climb down into the building itself and left no further physical obstruction. *In fact an entry into the building at least to the extent of three feet would have been necessary in order to reach in and remove the wooden grating.* In *People v. Urbana*, 18 Ill. 2d 81, relied upon by defendant, entry into the building itself was still barred by a steel door despite the removal of an outer gate." (Emphasis added.) 28 Ill. 2d 433, 438, 192 N.E.2d 861, 864.

The defendant maintains that under *Songer* entry by part of the body is sufficient to support a burglary only if no obstruction exists for entry of the rest of the body or, as set forth in *Davis*, the part of the body that enters is used to commit the intended felony or theft. Thus, if one reached in through a hole with an arm to take out an object with intent to steal it, burglary would be committed. But, if one reached in merely to unbolt a door so that full entry could later be made to then commit a felony or theft, no burglary would be committed by the reaching in. Under this

theory, the defendant would not have entered the apartment here by sticking his head and arm through the hole in the ceiling because he was doing this only to aid his subsequent full entry into the apartment.

We agree with the *Davis* theory that entering with only an instrument would support a conviction for burglary only if done with the intention to commit the subsequently intended offense with the instrument. We do not agree that the same rule applies to entries made by only a portion of the alleged offender's body. As *Songer* speaks of the entrant having likely "reached in" to remove the grate, we deem it to hold that entry by part of the body is sufficient to support a burglary and that the bodily entry can be done for purposes other than the direct commission of the intended offenses. We also consider *Songer* to hold that the entry would have been sufficient even if the grating had not been removed even though its removal made the entry more certain. The court distinguished the case from *Urbana* where a steel door defined the close of "the building itself."

We hold the proof of entry here to be sufficient. Our holding is consistent with *People v. Roldan* (1968), 100 Ill. App. 2d 81, 85, 241 N.E.2d 591, 593. There a defendant who had kicked in a window so that others might enter a building to loot it was held to have committed burglary not only as an accessory but also as a principal. The court called the physical act of kicking in the window to be an "entry."

Courts elsewhere have also espoused the same rule. A burglary conviction was affirmed in *People v. Failla* (1966), 64 Cal. 2d 560, 414 P.2d 39, 51 Cal. Rptr. 103, where the evidence showed that the defendant had one foot on the windowsill and another foot suspended in midair inside the room. In *State v. Liberty* (Me. 1971), 280 A.2d 805, a rock had been thrown through a window and items in an office disturbed. The court affirmed the defendant's burglary conviction not on the basis of the rock, for as an instrument it had not been used to commit a theft or felony, but rather on the disarray inside the office, which implied that a bodily entry had been made. In *State v. Maddox* (Mo. 1971), 465 S.W.2d 607, the occupant of a house opened the front door while the defendant was picking the lock, and the defendant fell into the house. The court called this an attempted rather than a completed burglary. In *Commonwealth v. Carter* (1975), 236 Pa. Super. 376, 344 A.2d 899, *rev'd on other grounds* (1978), 482 Pa. 274, 393 A.2d 660, and *State v. Crow* (Tenn. 1974), 517 S.W.2d 753, glass in or next to doors had been broken. In both cases, the courts reached the conclusion that the defendants' hands had intruded through the holes to reach the locks.

The defendant's complaint concerning the instructions centers upon the court's giving, over defense objection, the State's version of Illinois Pattern Jury Instructions, Criminal, No. 14.06 (1968) (hereinafter IPI), which stated that among the propositions the State must prove was that

the defendant entered the building "with intent to commit a felony or theft." The court then properly defined the term "theft" and gave an instruction informing the jury that a felony was an offense for which a person could be sentenced to imprisonment for more than 1 year or death.

The Committee Note to IPI Criminal No. 14.06 (1968) states that the instruction shall designate the crime which the defendant is claimed to have intended to commit. Here, the crime of theft was properly designated as one of the crimes, but the instruction did not list any specific felonies. The crime of theft was properly described by other instructions but the jury was neither informed as to what conduct would constitute any other offenses the defendant might have intended to commit nor whether those offenses carried a sufficient penalty to make them a felony.

■ The defendant offered and was refused instructions defining the offenses of criminal trespass to property, criminal damage to property, and disorderly conduct. At oral argument, his counsel conceded that these offenses were not charged and were not included offenses of the burglaries charged. The defendant argues that they were offered so that the jury would know the nature of some nonfelonious offenses which he might have intended to commit inside the apartment. Argument on his behalf could then be made that if the defendant intended to do only these things, he was not guilty of burglary. No precedent supports giving instructions for this reason, and to do so would likely cause more confusion than enlightenment. The trial court properly refused them.

■■ The argument in support of the instructions illustrates, however, the error in the form in which IPI No. 14.06 was given. The circumstantial evidence was fully sufficient for the jury to have inferred that the defendant intended to commit theft inside the apartment. (*People v. Loden* (1975), 27 Ill. App. 3d 761, 327 N.E.2d 58; *People v. Gooch* (1966), 70 Ill. App. 2d 124, 217 N.E.2d 523.) But because of the defendant's rather bizarre conduct, the jury could have rejected that inference and concluded that he intended to commit conduct of the type described in his tendered instructions. Under the format of instructions as given, the jury was not advised as to whether an intention to commit that type of offense would constitute a burglary and could have erroneously concluded that it did. Thus, giving of IPI Criminal No. 14.06 without specifying and defining felonious conduct, the intention to commit which would have been a basis for burglary, was reversible error.

■■ ■ We see no merit in other claims of error. Citing *People v. Heard* (1970), 47 Ill. 2d 501, 266 N.E.2d 340, the defendant asserts that merely listing the intent to commit burglary and the intent to commit theft in the disjunctive in IPI Criminal No. 14.06 was error. *Heard*

concerns alleging in the disjunctive in an indictment offenses arising out of different acts and is not on point here. We see no reason why the instruction could not properly have listed in the disjunctive an intent to commit various appropriate offenses as long as the offenses were properly defined and evidence supported their listing. We also see no error arising from the defendant's being charged with two burglaries and the jury's being instructed as to both of them. Evidence indicated that he made entries to both the apartment building and complainant's apartment.

For the reasons stated, we reverse and remand for a new trial.

Reversed and remanded.

MILLS, P. J., and WEBBER, J., concur.