No. 2--06--0292    Filed: 12-14-07

---

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 05--CF--3654 |
| MARION H. PARHAM, | ) ) | Honorable John T. Phillips, |
| Defendant-Appellant. | ) | Judge, Presiding. |

---

JUSTICE BYRNE delivered the opinion of the court:

After a jury trial, defendant, Marion H. Parham, was convicted of two counts of burglary for knowingly and without authority entering two separate motor vehicles with the intent to commit a theft therein, in violation of section 19--1(a) of the Criminal Code of 1961 (Code) (720 ILCS 5/19--1(a) (West 2004)). The trial court sentenced defendant to concurrent terms of 5½ years' imprisonment. On appeal, defendant contends that (1) he was not proved guilty of burglary beyond a reasonable doubt, because the evidence was insufficient to establish that he entered the motor vehicles he was charged with burglarizing; (2) the trial court committed reversible error in its response to communications from the jury during deliberations; and (3) trial counsel was ineffective for failing to tender a lesser-included offense instruction on attempted burglary. We agree that defendant was not proved guilty beyond a reasonable doubt as to count I, and we reverse outright defendant's conviction under that count. We further find that the trial court committed reversible

error in its response to the jury during deliberations as to count II, and we thus reverse defendant's conviction under that count and remand for a new trial. Based on our decision, we need not determine whether trial counsel was ineffective.

BACKGROUND

The State filed a three-count indictment, charging defendant with burglary of three different vehicles. Count I charged defendant with burglarizing a 1992 Pontiac Grand Am owned by Mario Campos. Count II charged defendant with burglarizing a 1996 Chevrolet Silverado pickup truck owned by Roberto Rodriguez. Count III charged defendant with burglarizing a 1989 Nissan owned by Hector Ochoa, but the trial court granted defendant's motion for a directed verdict and dismissed that count .

At trial, Jose Corona testified that he lived at 954 Tobin Court in Waukegan. He was home watching television at 3 a.m. on September 23, 2005, when he heard a dog barking outside. He thought it was unusual for a dog to bark for such a long time at that hour. Corona looked out of his bedroom window and saw in the parking lot a man whom he thought was a friend but soon realized he did not recognize. Corona saw the stranger trying to open the doors of a black, four-door Honda Accord, but none of the doors opened. The stranger then attempted to open the doors of a Chevrolet Silverado located next to the Accord. Corona described the stranger as big and tall. Corona stated that the stranger was near a streetlight.

Corona testified that he telephoned his neighbor and friend, Yadir Nevarez. Corona went downstairs after he called Nevarez, but he was not able to see the stranger. After Nevarez came to Corona's apartment, both Corona and Nevarez went outside to the front yard to investigate. Corona could not see the stranger at this point. Corona and Nevarez stood and waited in the yard because

the stranger would have to go past them to leave the apartment complex. Shortly after, Corona saw the stranger near a Pontiac approximately two cars from the Silverado. Corona did not see anything else because it was dark.

Corona testified further that the stranger attempted to ride a bicycle to get away from Corona and Nevarez. Corona and Nevarez approached the stranger while he was on his bicycle but they could not catch him. The stranger then started to run away on foot and Corona and Nevarez grabbed him. The stranger told them to leave him alone. Corona observed that he was holding something under his sweater and, when Corona and Nevarez grabbed him, a car stereo fell to the ground. Corona recognized the car stereo from his uncle Mario's Pontiac Grand Am. Corona never told the police that he recognized the car stereo. At trial, he claimed that he had been in the Grand Am many times and that his uncle had owned the car for five to eight years. Corona stated that the only person in the area that night other than himself, Nevarez, and the stranger, was a person named Orozco, who came outside later.

Corona testified that Nevarez called the police and that Corona held the stranger until they arrived. After taking the stranger into custody, the police interviewed other people in the neighborhood. Corona stated that he saw them interview his aunt Maria Campos and Jesus Nomar. Corona claimed that the Grand Am belonged to Maria and his uncle Mario. Corona was unable to make an in-court identification of defendant as the stranger. Corona further stated that he never saw any man, or defendant in particular, take anything from any vehicle.

Yadir Nevarez testified that he lives at 1220 Tobin Court in Waukegan. On September 23, 2005, at approximately 3 a.m., Corona telephoned him, telling him that there was a stranger trying to open vehicle doors in the parking lot near their complex. Nevarez went to Corona's home after

Corona called him. Nevarez saw a black male looking into vehicles in the parking lot, trying to open them. Nevarez saw the stranger going through a toolbox on the flatbed of a Silverado truck.

Nevarez explained how he and Corona waited for the stranger so they could catch him when he came from the parking lot. Nevarez saw the stranger get on a bicycle. When Nevarez and Corona approached the stranger, the stranger dropped his bicycle and began to run. Nevarez and Corona grabbed the stranger as he was trying to run away. As they grabbed him, a car stereo fell from underneath the stranger's sweater. The stranger told them that somebody had sold him the stereo and that the stereo belonged to him. Nevarez identified defendant as the stranger. Nevarez testified that he did not see the stranger open any vehicles or take anything from any vehicle.

Rodriguez, the owner of the Silverado pickup truck, testified that he parked his truck in front of his home at 1141 Tobin Court on September 22, 2005, at 5 p.m. He stated that a large toolbox with two doors extending the box's entire width was permanently mounted on the flatbed part of the truck. Rodriguez left the doors to the toolbox closed but not locked. He kept gardening equipment in the toolbox, including shovels, scissors, and shears. Rodriguez explained that, although the toolbox itself was completely enclosed, the flatbed was not enclosed and anyone could gain access to it without a key. Rodriguez did not give anyone permission to enter his truck or his toolbox after 5 p.m. on September 22, 2005.

The police awoke Rodriguez at approximately 3 a.m. on September 23, 2005, to ask him to inspect his truck. Upon examining his truck and toolbox, Rodriguez discovered that one of the lids to the toolbox was open. However, no items from the toolbox were missing or had been moved.

Valatwan Hayes, a Waukegan police officer, testified that she was dispatched to the 1110 block of Tobin Court at 3 a.m. on September 23. When Hayes arrived on the scene, she found two

men holding another man, later identified as defendant. Hayes noticed bulges in defendant's pockets and proceeded to pat him down. Hayes found several music compact discs (CDs) and a utility tool with a flashlight located at one end and a switch that released a razor at the other end. Over objection, the CDs and the tool were admitted into evidence.

Hayes testified that a majority of the artists on the CD labels were Latin artists. Hayes asked defendant about the number of Latin CDs in his possession. Defendant told Hayes that they were all "R&B" and "rap" CDs and that the CDs belonged to him. Hayes asked defendant if he knew how to speak Spanish and defendant responded that he did not speak or understand Spanish.

Hayes conducted an investigation of the cars that were allegedly burglarized. Hayes observed the open toolbox on the flatbed of the Silverado. Hayes saw the doors closed to the Nissan but then the owner opened the vehicle. Hayes noticed that the glove box of the Nissan was open. Hayes found a car stereo on the ground, adjacent to where she found defendant and the two witnesses.

Officer Jeffrey Scott Ferdina, an evidence technician with the Waukegan police department, testified that he investigated the scene of the alleged burglaries at 3 a.m. on September 23, 2005. Ferdina stated that the Silverado pickup truck looked normal except that the cover of the toolbox, which was located on the driver's side of the flatbed, was up. Ferdina noted that the glove compartment of the Nissan was open. He did not know the circumstances of how it had opened or how the cover of the Silverado toolbox came up. Ferdina found a car stereo on the pavement near the area where defendant was taken into custody. A photo exhibit was admitted into evidence. Ferdina also recovered 31 music CDs on the pavement.

Following the State's evidence, defense counsel moved for a directed verdict. The trial court granted the request as to count III, regarding the alleged burglary of the Nissan, but denied the

request as to counts I and II, regarding the Grand Am and the Silverado, respectively. The case proceeded to closing arguments.

During its deliberations, the jury sent a note to the judge, reporting that it was "hung on both counts." The prosecutor asked that the jury be given a Prim instruction. See People v. Prim, 53 Ill. 2d 62 (1972) (instructions given to a deadlocked jury). Defense counsel objected, and the judge decided to send the jury home for the evening. The following day, the jury reconvened its deliberations.

The jury sent another note to the judge, asking the following:

"We have questions regarding the law as it relates to the jury's duties. If a defendant has been charged with a crime, can the jury assume that the crime occurred? Not that the defendant is guilty of committing the crime, but simply that the crime did happen? Is the fact that there is a charge itself enough to infer that it's a fact? For example, if the defendant is charged with assaulting John Doe, would the jury be working within the law and its guidelines to assume that John Doe was the victim?

Also, we have another question--Does the act of lifting a car's door handle constitute entry?

Thank you for taking the time to consider this question. We are all taking our job as jury members very seriously, and we simply want to be sure that we're entirely within the law as we deliberate.

P.S. May we have a list of all the witnesses."

In responding to the jury's note, the State asked the judge to refer the jury to the instructions previously tendered to it. Defense counsel initially requested that the judge direct the jury to the

particular instruction that states that the indictment is not evidence. The judge then proposed an instruction that consisted of a combination of instructions previously given to the jury.

Defense counsel and the State initially had no objection to the proposed instruction. Defense counsel then changed his mind before the judge tendered the proposed instruction to the jury. Counsel argued that the first question the jury posed could not be answered simply by referring the jury to a specific instruction that the indictment is not evidence. Counsel argued that the judge should answer: "No, they cannot assume a crime has been committed." Counsel argued that it was the State's burden to prove that the crime was committed and that defendant committed it. Counsel asserted that, if the jury's question were not answered, the jury would be allowed to assume, just because a crime had been charged, that a crime had been committed. The State argued that the question should not be answered directly and that the jury should be referred to the instructions already given.

Defense counsel further noted that the instruction that the indictment is not evidence did not answer the question whether the jury could assume from the indictment that a crime occurred. Counsel reasserted that the jury needed to be told that it could not assume that a crime had been committed and that this is what the State was required to prove. Counsel argued once again that the previous instructions did not answer the jury's question.

The State reasoned that, if the jury could not assume that a crime was committed, then the jury might assume that "this is all nothing." According to the State, it was the jury's job to decide if a crime was committed. Defense counsel agreed but reiterated his concern that if the question were not answered the jury would assume that a crime had been committed and confine its analysis to

whether defendant committed it. The judge decided to use most of the instructions that the State and defense counsel had originally agreed to and submitted the following:

"It is your function as the jury to determine if the [S]tate proved the propositions that I instructed you they must prove beyond a reasonable doubt. You have been given the instructions of the court on the law applicable to this case. You were instructed that it is your duty to determine the facts and to determine them only from the evidence in this case. You were also instructed that you are to apply the law to the facts and in this way decide the case. I also instructed you that only you are the judges of the believability of the witnesses and of the weight to be given to the testimony of each of them. I further instructed you that the indictment is the formal method of charging the defendant and placing the defendant on trial. It is not any evidence against the defendant. You are to consider all of the testimony which you heard and all of the exhibits that were admitted into evidence. You are to follow all of the instructions which have been given to you and continue with your deliberations."

The jury sent another note, written on an instruction regarding "evidence that the defendant made a statement relating to the offense charged in the indictment." The jury underlined the word "statement" and wrote: "This is in regards to what statement that the defendant made?" The State and defense counsel agreed that the jury could be instructed that it received all the evidence in the case.

Thereafter, the jury found defendant guilty of burglary on counts I and II, and the trial court entered judgment on the verdict. Defendant filed a motion for judgment notwithstanding the verdict or, alternatively, a new trial, but he did not raise any argument that the trial court failed to properly respond to the jury's communication during deliberations. Following arguments, the trial court denied

the motion. The trial court sentenced defendant to concurrent terms of 5½ years' imprisonment. Defendant's motion to reconsider his sentence was denied. This timely appeal follows.

ANALYSIS

I. Sufficiency of the Evidence

Defendant contends first that he was not proved guilty beyond a reasonable doubt of committing burglary of either the Grand Am or the Silverado. In considering a challenge to the sufficiency of the evidence, we ask only whether, after viewing all of the evidence in the light most favorable to the State, any rational fact finder could have found the elements of the offense proved beyond a reasonable doubt. People v. Maggette, 195 Ill. 2d 336, 353 (2001); People v. Hill, 276 Ill. App. 3d 683, 690 (1995). A court will not set aside a criminal conviction on grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that there exists a reasonable doubt of the defendant's guilt. Maggette, 195 Ill. 2d at 353.

In order to sustain the burglary convictions, the prosecution was required to prove beyond a reasonable doubt that defendant knowingly and without authority entered the motor vehicles with the intent to commit a felony or theft therein. 720 ILCS 5/19--1 (West 2004). Circumstantial evidence is sufficient to sustain a conviction of burglary, so long as the elements of the crime have been proved beyond a reasonable doubt. See People v. Hall, 194 Ill. 2d 305, 330 (2000). Possession of burglary proceeds, while evidence of burglary, is not an element of burglary. People v. Campbell, 161 Ill. App. 3d 147, 156 (1987).

Defendant contends that the State did not prove that he entered either the Silverado or the Grand Am, within the meaning of the term "entry" as used in the burglary statute. Defendant notes that no eyewitness ever saw him enter any motor vehicle or take anything from inside any motor

vehicle. Defendant reasons that proof of entry is an essential element of the offense of burglary and that it is not enough that an attempt was made. The State responds that defendant's assertions are misguided because defendant possessed stolen property from the Grand Am when he was apprehended and an eyewitness saw him going through the toolbox on the flatbed of the Silverado. We examine each count separately.

### A. Count I - Pontiac Grand Am

The State contends that it demonstrated that defendant possessed the car stereo from the Grand Am and that Corona's testimony proved that the stereo was stolen from the Grand Am. The State points out that defendant was caught with the car stereo after it fell from beneath his sweater and that Corona positively identified the stereo as belonging to his uncle. Corona testified that he saw the stereo in his uncle's Grand Am many times before the alleged offense, because he used to ride in the car once a week to school.

Defendant argues that the jury could not presume that he stole the stereo from the Grand Am, because the State failed to prove that the stereo was missing from the Grand Am or that defendant even entered the Grand Am within the meaning of the burglary statute. We agree.

We observe that the owner of the car stereo need not have testified to identify his or her property. Moreover, the jury could reasonably infer that the property was stolen, because the stereo fell from under defendant's sweater upon his being apprehended.

However, the evidence was insufficient to establish that the stereo was stolen from the Grand Am. Most importantly, no one testified that, following defendant's apprehension, a stereo had been stolen or was missing from the Grand Am. No one saw defendant open or enter the Grand Am or take anything from the vehicle. Additionally, Ferdina did not take any fingerprint evidence from the

inside of the vehicle or testify that there were any signs of forced entry into the vehicle. Thus, other than Corona's testimony, which failed to establish that the stereo was distinctive enough to permit a positive identification, nothing linked defendant's possession of the car stereo to the Grand Am. Accordingly, the State failed to prove beyond a reasonable doubt that defendant committed burglary of the Grand Am, and we must therefore reverse the burglary conviction under count I.

### B. Count II - Chevrolet Silverado

Defendant next contends that the evidence was insufficient to sustain the conviction of the burglary of the Silverado, because he did not enter the vehicle within the meaning of section 19--1 of the Code and, in any event, no eyewitness saw him enter the vehicle.

In People v. Frey, 126 Ill. App. 3d 484 (1984), the defendant was found guilty of burglary and theft. An off-duty patrolman spotted the defendant walk to the back of a truck, put on gloves, and take a sledgehammer from the open bed of the truck. The owner of the truck testified that he did not know the defendant and did not authorize him to take the sledgehammer from the truck.

The sole question raised on the defendant's appeal was whether section 19--1 of the Code applied to his unauthorized act of knowingly entering the open bed of a pickup truck with the intent to steal a sledgehammer therefrom. The court concluded "that an unauthorized, knowing entry into the bed of a pickup truck with the intent to steal something therefrom was an act properly characterized and chargeable as burglary." Frey, 126 Ill. App. 3d at 486. The court reasoned that the fact that the bed was not sheltered, protected, covered, closed or sealed, or in some other manner completely enclosed, was no defense to unlawful entry under the statute. The court noted that a common-law breaking was no longer an essential element of the crime of burglary and that an unlawful entry may be accomplished by "breaking the close," defined by the four sides, the bottom,

and the imaginary plane extending atop the sides and parallel to the bottom. Frey, 126 Ill. App. 3d at 487. We agree with this analysis. As the Frey court observed, if the defendant's argument were to be accepted, then open convertibles, motorcycles, small fishing boats, railroad flatcars, and the like could never be burglarized. We do not believe that this result was contemplated by the legislature, and we believe that the statute was designed to deter unauthorized entry into any part of a motor vehicle. See also People v. Dail, 139 Ill. App. 3d 941, 942-43 (1985) (intrusion of body of vehicle not required for burglary conviction, when the defendant reached inside engine compartment to steal battery).

Here, contrary to defendant's assertions, Nevarez testified that he saw a person going through the toolbox on the flatbed of the Silverado. Nevarez also identified defendant as the person he saw going through the toolbox. Rodriguez, the owner of the Silverado, testified that he did not authorize anyone to use his truck or his toolbox the night of the burglary. Thus, defendant was seen committing an unauthorized, knowing entry of the Silverado within the meaning of the burglary statute. Accordingly, the State proved the elements of burglary under count II beyond a reasonable doubt.

## II. Responses to Jury's Communications During Deliberation

In the alternative, defendant seeks a new trial. Defendant argues that the trial court committed prejudicial error in its response to communications from the jury during deliberations. Specifically, defendant asserts that the trial court erred in failing to properly answer the jury's questions regarding (1) whether it could infer from the fact that a crime had been charged in the indictment that a crime had been committed, and (2) whether lifting a car door handle constitutes an

entry. The State responds that the issue is waived because defense counsel did not object to the response given during trial and, in any event, the judge's response was correct.

Preliminarily, we observe that defendant ardently opposed the trial court's answer to the jury's first question. Nevertheless, defendant did not raise the issue in his posttrial motion and requests on appeal that we review the issue under the plain-error exception to the waiver rule. The plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence. People v. Herron, 215 Ill. 2d 167, 187 (2005). Under the first prong, the defendant must prove "prejudicial error." That is, the defendant must show both that there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him. Under the second prong, the defendant must prove that there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. People v. Piatkowski, 225 Ill. 2d 551, 565 (2007). Prejudice to the defendant is presumed because of the importance of the right involved, "regardless of the strength of the evidence." (Emphasis in original.) People v. Blue, 189 Ill. 2d 99, 138 (2000).

Defendant argues that plain-error review applies because the evidence is closely balanced. Thus, we first decide whether the trial court committed plain error in answering the jury's questions. We then examine the closeness of the evidence.

"A trial court may exercise its discretion and properly decline to answer a jury's inquiries where the instructions are readily understandable and sufficiently explain the relevant law, where further instructions would serve no useful purpose or would potentially mislead the jury, when the

jury's inquiry involves a question of fact, or if the giving of an answer would cause the court to express an opinion which would likely direct a verdict one way or another. (People v. Reid, 136 Ill. 2d 27, 39 (1990) (and authorities cited therein)). However, jurors are entitled to have their inquiries answered. Thus, the general rule is that the trial court has a duty to provide instruction to the jury where it has posed an explicit question or requested clarification on a point of law arising from facts about which there is doubt or confusion. (Reid, 136 Ill. 2d at 39.) This is true although the jury was properly instructed originally. (See People v. Morris (1980), 81 Ill. App. 3d 288, 290-91.) When a jury makes explicit its difficulties, the court should resolve them with specificity and accuracy. (Bollenbach v. United States (1945), 326 U.S. 607, 612-13, 90 L. Ed. 350, 354, 66 S. Ct. 402, 405; People v. Caballero (1984), 102 Ill. 2d 23, 42; see People v. Harmon (1968), 104 Ill. App. 2d 294, 301, relying on 23A C.J.S. Criminal Law §1376, at 305 (1989))." People v. Childs, 159 Ill. 2d 217, 228-29 (1994).

Defendant asserts that the judge had a duty to answer the jury's inquiry because it requested clarification on a point of law arising from facts about which there was doubt or confusion and that, therefore, we should apply a de novo review to the propriety of the judge's answer. The State retorts that the abuse of discretion standard is applicable. However, even if we were to apply the more deferential abuse of discretion standard, we would find that the trial court abused its discretion by failing to directly answer the jury's first inquiry.

A. Whether the Jury Could Infer from the Fact that a Crime was Charged that a Crime was Committed

Here, the jury posed an explicit question on a point of law about which it raised doubt and confusion. The jury's question manifested a fundamental misunderstanding of the basic constitutional

protections afforded to a criminal defendant. To assume from the fact that a crime had been charged that a crime had been committed undermines the presumption of innocence and denigrates the State's burden to prove guilt beyond a reasonable doubt. The judge's answer merely restated several of the instructions that he previously had given the jury. The only response that came close to answering the jury's question was the instruction that "the indictment is the formal method of charging the defendant and placing the defendant on trial. It is not any evidence against the defendant." However, even this particular answer did not inform the jury that it could not assume from the fact that a crime had been charged that a crime had been committed.

We find that the trial judge did not give the jury a specific and accurate response to the jury's question. By failing to directly answer the jury's question, the trial court raised a risk that the guilty verdict was the product of a presumption of guilt, based on the indictment, rather than a presumption of innocence. The function of jury instructions is to convey to the jury the law that applies to the evidence presented, and the judge's response did not convey the proper answer. We agree with defendant that the judge should have told the jury specifically that it could not assume from the fact that a crime had been charged that a crime had been committed. We further agree that it would have been helpful at that juncture to again inform the jury that it was the State's burden to prove that a crime was committed and that defendant committed it.

Having determined that the response given to the jury was a clear and obvious error, we must next determine whether defendant met his burden to show that the error was prejudicial. Herron, 215 Ill. 2d at 193. Specifically, did defendant show that the evidence was "closely balanced"? Whether the evidence is closely balanced is a question separate and distinct from whether the evidence is sufficient to sustain a conviction against a reasonable doubt challenge. For the reasons previously

discussed, the evidence is sufficient to sustain the conviction of burglary of the Silverado. At this point in our analysis, we determine whether the evidence is closely balanced.

As to whether the evidence is closely balanced, we begin by noting that there were several "holes" in the State's evidence. Of the two eyewitnesses who saw defendant in the parking lot, only Nevarez could identify defendant in court as the person whom he saw going through the toolbox on the Silverado. Corona never saw defendant go through the toolbox and could not identify defendant in court. Moreover, the State never asked Nevarez where he was when he saw defendant go through the toolbox. If Nevarez saw defendant from his window, it would have been just moments after Nevarez awoke, it was dark outside, and the parking lot was not well lit. If Nevarez saw defendant go through the toolbox while he and Corona waited outside for defendant to come from the parking lot, his view may have been obscured because, as Corona testified, he could not see defendant at all because of the vehicles between them. Additionally, all of the items that Rodriguez left in the toolbox were still in the toolbox and had not been disturbed. Furthermore, Ferdina never submitted any fingerprints linking defendant to the toolbox.

In this case, the error was not harmless, because the evidence was closely balanced. Considering the closely balanced evidence, the court's inaccurate response to the jury's question raised a risk that the jury would assume from the fact that a crime was charged that a crime was committed. Consequently, the outcome of the case may have been different if the jury had been given the proper response. Accordingly, we must reverse and remand for a new trial on the charge of burglary to the Silverado under count II.

There is no double jeopardy problem, because defendant was proved guilty beyond a reasonable doubt. See People v. Taylor, 76 Ill. 2d 289, 309 (1979). Nevarez testified that he saw

defendant reach into the toolbox of the Silverado. Rodriguez testified that he did not authorize anyone to enter his truck or his toolbox.

### B. Whether Lifting a Car Door Handle is an Entry

We need not address whether the trial court erred in answering the jury's second inquiry, regarding whether lifting a car door handle is an entry, because we reverse on count I and this question does not concern the burglary to the Silverado.

### III. Ineffective Assistance of Counsel

Defendant last contends that his counsel was ineffective for failing to tender the attempted burglary instruction. Because we reverse on count I and reverse and remand for a new trial on count II, the issue regarding ineffective assistance of counsel is moot. We note, however, that whether the trial court should instruct the jury on the lesser-included offense of attempted burglary might arise on remand. Accordingly, we offer the following.

The offense of attempted burglary is an included offense of burglary, as section 2--9(b) of the Code (720 ILCS 5/2--9(b) (West 2004)) expressly provides that an attempt to commit an offense is an included offense of the offense attempted. For a defendant to be entitled to an instruction on an included offense, "the evidence must permit a jury to rationally find [the] defendant guilty of the lesser offense and acquit him of the greater." People v. Reynolds, 152 Ill. App. 3d 216, 218 (1987), citing People v. Bryant, 113 Ill. 2d 497, 507 (1986). Thus, the question of whether a defendant is entitled to an instruction on attempted burglary depends entirely upon whether the evidence calls for giving the instruction. People v. Roberts, 189 Ill. App. 3d 66, 73 (1989).

For example, in Reynolds, the jury found the defendant guilty of the offense of residential burglary. He argued on appeal that the trial court erred in refusing to instruct the jury on the lesser-

included offense of attempted residential burglary. The Reynolds court found that there was no evidence that would allow the jury to find the defendant guilty of the offense of attempt. A trailer home was burglarized by the defendant or someone else. No evidence indicated that the defendant attempted to enter the trailer home and then stopped before making an entry. The court concluded that, where the evidence shows that the accused is guilty of the greater offense or not guilty of any offense, an instruction on the lesser offense is unnecessary and properly refused. Reynolds, 152 Ill. App. 3d at 219; see also Roberts, 189 Ill. App. 3d at 73 (defendant not entitled to attempted burglary instruction because the undisputed evidence showed an entry).

## CONCLUSION

In summation, we reverse outright defendant's burglary conviction under count I, and we reverse defendant's burglary conviction under count II and remand for a new trial on that count only. There is no double jeopardy problem regarding count II, because the record reflects sufficient evidence proving defendant guilty beyond a reasonable doubt. Taylor, 76 Ill. 2d at 309.

Reversed and remanded.

GILLERAN JOHNSON and ZENOFF, JJ., concur.