Docket Nos. 108335, 108350 cons.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
ALBERT BEAUCHAMP, Appellee.–THE PEOPLE OF THE
STATE OF ILLINOIS, Appellant, v. MICHAEL JONES, Appellee
and Cross-Appellant.

*Opinion filed February 3, 2011.*

JUSTICE THEIS delivered the judgment of the court, with
opinion.

Chief Justice Kilbride and Justices Thomas, Garman, and Karmeier
concurred in the judgment and opinion.

Justice Burke dissented, with opinion, joined by Justice Freeman.

## OPINION

Following a joint bench trial in the circuit court of Cook County,
defendants Albert Beauchamp and Michael Jones were found guilty of
burglary (720 ILCS 5/19–1(a) (West 2006)). In separate appeals, the
appellate court modified the trial court's judgments to reflect
convictions for theft and remanded to the trial court for resentencing.
*Beauchamp*, 389 Ill. App. 3d 11; *Jones*, No. 1–07–2248 (unpublished
order under Supreme Court Rule 23).

For the reasons set forth below, we reverse the appellate court's
judgment in both cases and reinstate defendants' convictions and

sentences for burglary.

## BACKGROUND

Defendants were charged by indictment with burglary in that they, without authority, knowingly entered a motor vehicle with the intent to commit a theft therein. See 720 ILCS 5/19–1(a) (West 2006). At their joint bench trial, the State first called Pamela Little. Little testified that on January 29, 2007, at approximately 9:20 a.m., she parked her vehicle–a 2004 Chevy Trailblazer–in the Metra parking lot located at 104th and Throop Streets in Chicago. She noticed that a white car had entered the Metra lot behind her. After parking her vehicle, Little headed to the pay box to deposit the parking fee, but returned to her car shortly thereafter to check on it. Little testified that when she hit the button on the vehicle remote, she expected to see the lights flash and to hear a beep, but nothing happened. Little saw an African-American man standing two feet from her vehicle by the rear view mirror on the driver's side. Little ran across the street to the fire department and told a police officer that someone was trying to steal her car. Little testified that when she later returned to her vehicle, she saw that the lock on the rear hatchback, which was undamaged when she parked the car that morning, had been "punched out." Little also noticed that the hatchback window, which was closed and operating properly when she parked the vehicle, was missing. She later observed the window in the back of the white car that had followed her into the parking lot. On cross-examination, Little testified that the hatchback window opens "by itself" when the "little button on the back" of the vehicle is pressed, and that a hydraulic arm on either side lifts up the window. When asked whether "the only way [the window] opens is it comes out away from the truck," Little responded "yes."

The State next called Officer Freddy Frazier III. Officer Frazier testified that he was working the day shift on January 29, 2007, as a one-person unit in a marked squad car. After receiving a call from dispatch at 9:28 a.m., Officer Frazier proceeded to the Metra parking lot, where he noticed the amber signal lights flashing on a gray or silver "Chevy Blazer, SUV type vehicle." When asked whether he noticed anything else near the vehicle at that time, Officer Frazier answered: "There was a white car with two men [that] just got into the vehicle and the driver trying to start the car." The white car was

adjacent to the SUV. Officer Frazier pulled his squad car up to the white vehicle, blocking the driver's side, and exited his squad car. Officer Frazier described the white car as a "Buick Regal, small compact vehicle, just two doors," and testified that defendant Beauchamp was in the driver's seat, and defendant Jones was in the passenger seat. Officer Frazier noticed a window, approximately 4 feet by 3 to 3½ feet, in the backseat of the white car. Other officers arrived on the scene, and after defendants were secured, Officer Frazier observed that the window in the rear door of the SUV was missing, one hydraulic arm was on the ground, the other arm was dangling from the vehicle, and the rear door lock was "punched." Officer Frazier spoke with Little, who identified the window in the white car as coming from her vehicle.

The parties stipulated that the SUV was owned by Little's husband, who had not given anyone permission to remove the rear window. The State rested.

Both defendants moved for a directed finding of not guilty, arguing that the State had failed to prove an essential element of the offense of burglary: an "entry" into the vehicle. Defendants argued that the window was completely outside of the vehicle "because all you had to do was press that lever and the window came up and out." The State argued, however, that the window could not be removed "without somehow reaching into the vehicle. The window does not just pop off." The trial court denied defendants' motions, stating in relevant part:

> "[I]n order to remove a window from a vehicle for purposes of the burglary statute, you enter the vehicle since the window has both an inside and an outside and you are removing something that has both an inside and an outside on a vehicle."

The trial court also concluded that the evidence showed that the hydraulic arms that opened the window were on the inside, and that punching out the rear lock constituted an entry, regardless of how the window was removed.

Defendant Jones further argued for a directed finding of not guilty, maintaining that the State had failed to prove that he was a participant and not merely a passenger in the car. The trial court found the evidence sufficient to withstand Jones' motion for a directed finding

on this issue.

Defendants called no witnesses, and after closing argument, the trial court found both defendants guilty of burglary. The trial court denied defendants' posttrial motions for a new trial, and sentenced defendant Beauchamp to three years' imprisonment and defendant Jones to six years' imprisonment as a Class X offender. Both defendants appealed.

In Beauchamp's case, the appellate court held, over a dissent, that the State had not proven an entry into the vehicle. *Beauchamp*, 389 Ill. App. 3d at 15-18. According to the appellate court majority, the State failed to present direct or circumstantial evidence that defendant Beauchamp "broke the plane" enclosing the protected space of the vehicle. *Beauchamp*, 389 Ill. App. 3d at 17. The appellate court disagreed with the trial court that the evidence established that the hydraulic arms were attached to the interior of the vehicle, and rejected the notion that punching the door lock constituted an entry into the vehicle. *Beauchamp*, 389 Ill. App. 3d at 15-16. Rather than an outright reversal, the appellate court modified the judgment to reflect a conviction of theft and remanded the matter to the circuit court for resentencing. *Beauchamp*, 389 Ill. App. 3d at 19. The dissenting justice would have affirmed the trial court, stating that defendants must have gained "at least minimal access to the protected interior, or the close, of the vehicle." *Beauchamp*, 389 Ill. App. 3d at 20 (Garcia, J., dissenting).

The same panel of the appellate court that reviewed Beauchamp's appeal reviewed Jones' appeal. The appellate court held that the evidence was sufficient to establish Jones' guilt through active participation or through accountability for Beauchamp's actions, and modified the judgment to reflect a conviction of theft and remanded to the circuit court for resentencing. *Jones*, No. 1–07–2248 (unpublished order under Supreme Court Rule 23). Justice Garcia agreed that the evidence was sufficient to find Jones guilty as an active participant, but would have affirmed his burglary conviction. *Jones*, No. 1–07–2248 (unpublished order under Supreme Court Rule 23) (Garcia, J., concurring in part and dissenting in part).

We allowed the State's petitions for leave to appeal (Ill. S. Ct. R. 315 (eff. Feb. 26, 2010)) and consolidated the cases for review.

ANALYSIS

I

We consider first the State's argument that the evidence adduced at trial sufficiently established an entry into the vehicle.

When considering the sufficiency of the evidence, "our function is not to retry the defendant." *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). Rather, we must determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); see also *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). This means that we "must allow all reasonable inferences from the record in favor of the prosecution." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). As a reviewing court, "[w]e will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt." *People v. Collins*, 214 Ill. 2d 206, 217 (2005).

Under the statute, a person commits burglary when without authority he knowingly enters a motor vehicle, or any part thereof, with intent to commit therein a felony or theft. 720 ILCS 5/19–1(a) (West 2006). The purpose of the burglary statute is "to protect the security and integrity of certain specified enclosures, including motor vehicles." *People v. Steppan*, 105 Ill. 2d 310, 317 (1985). A burglary is complete upon entering with the requisite intent, irrespective of whether the intended felony or theft is accomplished. *People v. Clark*, 30 Ill. 2d 216, 219 (1964); *People v. Poe*, 385 Ill. App. 3d 763, 766 (2008); *People v. Palmer*, 83 Ill. App. 3d 732, 734 (1980).

An entry for purposes of the statute does not require intrusion by a person's entire body; an intrusion by part of the body into the protected enclosure is sufficient (*Palmer*, 83 Ill. App. 3d at 736), even if the intrusion is slight (*People v. Roldan*, 100 Ill. App. 2d 81, 85 (1968)). In other words, an entry may be accomplished simply by "breaking the close," *i.e.*, crossing the planes that enclose the protected space. *People v. Parham*, 377 Ill. App. 3d 721, 730 (2007). Thus, courts have found an entry for purposes of the burglary statute where the defendant reached into the open bed of a pickup truck

(*People v. Frey*, 126 Ill. App. 3d 484, 486-87 (1984)), the engine compartment of a vehicle (*People v. Dail*, 139 Ill. App. 3d 941, 943 (1985)), and a tool box mounted to the back of a truck (*Parham*, 377 Ill. App. 3d at 730). An entry also may be accomplished by breaking the close with an instrument, rather than the defendant's person, but only if done with the intention of using the instrument to commit the intended felony or theft. *Palmer*, 83 Ill. App. 3d at 736; see also 3 W. LaFave, Substantive Criminal Law §21.1(b), at 210 (2d ed. 2003).

With these principles in mind, and viewing the evidence in the light most favorable to the State (*Collins*, 106 Ill. 2d at 261), we conclude that an entry into the vehicle was proved. Although the State presented no direct evidence that defendants broke the close of the vehicle, a burglary conviction may be sustained on circumstantial evidence. *People v. Richardson*, 104 Ill. 2d 8, 13 (1984) (citing *People v. Palmer*, 31 Ill. 2d 58, 66 (1964)). Little's testimony established that the rear window of her vehicle, which was operating properly, was closed when she parked the vehicle in the Metra parking lot, and that two hydraulic arms lift the rear window outward when a button on the rear door is pressed. Little's testimony also established that prior to being punched out, the lock on the rear door was undamaged. Officer Frazier's testimony established that after removal of the window, which he estimated was 4 feet by 3 or 3½ feet, one of the hydraulic arms was dangling from the vehicle, and the other was lying on the ground. Although Little and Frazier did not testify about the exact location of the hydraulic arms, we consider it a matter of common knowledge that the arms are necessarily affixed to the interior of the vehicle. See *Cunningham*, 212 Ill. 2d at 281 (courts may notice matters of common knowledge).

Based on this evidence, a reasonable inference exists that when the rear door lock was punched out, defendants were able to open the rear window by either pressing the button or prying it open. Once open, defendants could grasp the window from both sides. Though touching the inside of the window, where the window opened away from the vehicle, does not constitute an entry, other evidence proved that defendants did, in fact, break the close of the vehicle. We note first the size of the window: 4 feet by 3 to 3½ feet. Removing a window of this size is not akin to removing a hood ornament. A fair amount of maneuvering and force is necessary to remove it from the

vehicle. As the State argued at trial, the window did not simply "pop out." We note also that during the process of removing the window, not only was the window detached from both hydraulic arms, but one of the arms was completely detached from the vehicle. Under these circumstances, we agree with the dissenting justice that it was "a physical impossibility to remove the hatchback window without gaining at least minimal access to the protected interior, or the close, of the vehicle." *Beauchamp*, 389 Ill. App. 3d at 20 (Garcia, J., dissenting).

We hold that the State proved an entry for purposes of the burglary statute.

## II

We next consider defendant Jones' request for cross-relief. Jones argues that the State's evidence established only that Jones was a passenger in the vehicle and failed to prove that he actively participated in the offense. We disagree.

The evidence established that approximately eight minutes passed from the time Little parked her vehicle to the time Officer Frazier proceeded to the scene. During that brief period, the rear door lock on Little's vehicle was punched out, the sizeable rear window was removed from the vehicle, along with one of the hydraulic arms, and the window was placed in the backseat of the two-door car which had followed Little into the parking lot. Although Little did not identify the man she saw standing near her vehicle, Officer Frazier testified that when he pulled into the Metra parking lot, he observed two men getting into a small, two-door Buick, with the missing window in the backseat. Viewing this evidence in the light most favorable to the State (*Collins*, 106 Ill. 2d at 261), we hold that the State proved that defendant Jones participated in the burglary of Little's vehicle. To adopt Jones' view of the evidence would mean that Jones innocently sat in the passenger seat, while Beauchamp wrestled the four-foot window off of Little's vehicle and into the backseat of the two-door car. Like the courts below, we reject such an unreasonable inference.

## CONCLUSION

For the reasons stated, we reverse the judgment of the appellate

court in Beauchamp's case modifying the trial court's judgment to reflect a conviction for theft, and reinstate Beauchamp's conviction and sentence for burglary. In Jones' case, we also reverse the judgment of the appellate court modifying the trial court's judgment to reflect a conviction for theft, and reinstate Jones' conviction and sentence for burglary.

No. 108335–Appellate court judgment reversed; circuit court judgment affirmed.

No. 108350–Appellate court judgment reversed; circuit court judgment affirmed.

JUSTICE BURKE, dissenting:

The principal issue in this case is whether the State proved that defendants "entered" into the SUV for purposes of the burglary statute (720 ILCS 5/19–1(a) (West 2006)). An entry is made when the defendant "breaks the close," that is, when the defendant crosses one of the imaginary planes that enclose the protected space. *People v. Parham*, 377 Ill. App. 3d 721, 730 (2007).

The majority concludes that defendants "broke the close" of the SUV when they removed the vehicle's rear window. The majority states:

> "[A] reasonable inference exists that when the rear door lock was punched out, defendants were able to open the rear window by either pressing the button or prying it open. Once open, defendants could grasp the window from both sides. Though touching the inside of the window, where the window opened away from the vehicle, does not constitute an entry, other evidence proved that defendants did, in fact, break the close of the vehicle. We note first the size of the window: 4 feet by 3 to 3½ feet. Removing a window of this size is not akin to removing a hood ornament. A fair amount of maneuvering and force is necessary to remove it from the vehicle. As the State argued at trial, the window did not simply 'pop out.' We note also that during the process of removing the window, not only was the window detached

-8-

from both hydraulic arms, but one of the arms was completely detached from the vehicle. Under these circumstances, we agree with the dissenting justice that it was 'a physical impossibility to remove the hatchback window without gaining at least minimal access to the protected interior, or the close, of the vehicle.' *Beauchamp*, 389 Ill. App. 3d at 20 (Garcia, J., dissenting).

We hold that the State proved an entry for purposes of the burglary statute." Slip op. at 6-7.

I disagree. The window in this case is hinged at the roof line and opens out and away from the SUV. By grabbing hold of the open window, defendants did not enter the interior of the car. The majority's statements that the window was of substantial size and that defendants had to use more force to remove the window than is needed to remove a hood ornament does not change this fact. Indeed, it is precisely *because* the window was of substantial size that defendants needed both hands to support it while wrestling it off the SUV and, if both hands were on the window, they could *not* have been in the interior of the vehicle. The majority would have the defendants grasping the edge of the open window with both hands and wrenching it off the SUV, while simultaneously placing an unspecified portion of their bodies into the interior of the vehicle. This scenario is simply impossible.

The majority also notes that one of the hydraulic arms was completely detached from the SUV. The implication here is that defendants did not remove the window by wrestling it off from the outside. Instead, defendants reached into the interior of the car where the hydraulic arm was attached and, in some manner, removed the arm at its base. Thus, according to the majority, it was a "physical impossibility" to remove the window without gaining access to the interior of the vehicle. Again, the size of the window compels the opposite conclusion.

Because the window was of substantial size, the window itself provided the necessary weight and leverage to rip the hydraulic arm from its base. Moreover, the majority does not explain how, if defendants did not use the window for leverage, they were able to remove the arm. The State failed to introduce any evidence that defendants possessed a tool capable of prying off the base of the

hydraulic arm and we clearly cannot presume that defendants removed the base of the arm with their bare hands. Further, the second hydraulic arm was still attached at its base to the interior of the SUV. This indicates that defendants' *modus operandi* for removing the window was not to carefully pry off the bases of the hydraulics arms, but rather to grab the window and, by using leverage and brute force, wrench it off the vehicle as quickly as they could. Indeed, according to the testimony recounted by the majority, only eight minutes elapsed during the crime, underscoring the fact that the window was not carefully removed.

Finally, *even if* the State had proven that defendants possessed a tool capable of prying off the base of the first hydraulic arm, this would not satisfy the State's burden of proof. The rule is long-established that an entry does not occur when an instrument is used solely to create an opening *even though* the instrument "breaks the close." See, *e.g.*, 3 Wayne R. LaFave, Substantive Criminal Law §21.1(b), at 210 (2d ed. 2003) ("there was no entry where an instrument was used to open the building, even though it protruded into the structure"); 3 Charles E. Torcia, Wharton's Criminal Law §323, at 248-50 (15th ed. 1995). When an instrument is used solely to create an opening, a portion of the defendant's body must enter the protected space for an entry to occur. *Parham*, 377 Ill. App. 3d at 730. In this case, there was no evidence as to whether it was possible to reach the base of the hydraulic arm with a tool (assuming one existed) without defendants' placing a portion of their bodies in the vehicle's interior. We cannot conclude, therefore, that an entry occurred simply because the base of the first hydraulic arm was detached.

When reviewing the sufficiency of the evidence, we must allow all reasonable inferences in favor of the prosecution. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). We may not, however, engage in speculation and assume conclusions that are not supported by the evidence. See *People v. Smith*, 185 Ill. 2d 532, 546 (1999). Even viewing the evidence presented in the light most favorable to the State, that evidence showed only that defendants "punched out" the lock of the SUV, that the rear window popped open, that defendants grabbed it and that they wrenched it off the car. The evidence did not show beyond a reasonable doubt that defendants committed an entry

by crossing into the threshold of the vehicle's frame, and most assuredly did not show that it was a "physical impossibility" to remove the window without entering the SUV. Thus, as the appellate court correctly held, the defendants were proven guilty of theft, not burglary.

For the foregoing reasons, I respectfully dissent.

JUSTICE FREEMAN joins in this dissent.