NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180058-U

NO. 4-18-0058

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 2, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| ANNA LYNN ROBINSON, | ) | No. 16CM597 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John R. Kennedy, |
| | ) | Judge Presiding. |

_____

JUSTICE HOLDER WHITE delivered the judgment of the court.
Presiding Justice Steigmann and Justice Turner concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court granted counsel's motion to withdraw under *Anders v. California*, 386 U.S. 738 (1967), where the State met its burden of proving defendant guilty beyond a reasonable doubt and the trial court did not abuse its discretion in sentencing defendant to 12 months' supervision.

¶ 2       This case comes to us on the motion of the Office of the State Appellate Defender (OSAD) to withdraw as counsel on appeal because any request for review would be without merit. Specifically, OSAD asserts it can make no meritorious argument that (1) the State failed to meet its burden of proving defendant guilty of battery beyond a reasonable doubt or (2) the trial court abused its discretion in sentencing defendant to 12 months' supervision. We grant OSAD leave to withdraw as counsel and affirm the trial court's judgment.

¶ 3                                     I. BACKGROUND

¶ 4        In June 2016, the State charged defendant, Anna Lynn Robinson, with two counts of battery for spraying David Wills and Gladys Fancher with pepper spray.

¶ 5                            A. Pretrial Proceedings

¶ 6        In September 2016, defense counsel filed a motion for the appointment of a psychiatrist to evaluate defendant's "fitness to proceed to a hearing and sanity at the time of the offense." Following a hearing, the trial court granted the motion and appointed Dr. Albert Lo to examine defendant. Dr. Lo's report found defendant able to understand the legal system but unable to work with an attorney to provide a proper defense. Dr. Lo therefore found defendant unfit to stand trial. Following a November 2016 hearing, the court found defendant unfit to stand trial. The court subsequently ordered defendant to participate in outpatient treatment at Rosecrance.

¶ 7        In a January 2017 report, Becky Griffin, a licensed clinical social worker at Rosecrance, stated, "Due to [defendant's] report of no active mental health symptoms and minimal history of psychiatric symptoms or treatment she does not meet the criteria for a DSM-V diagnosis and she is not being recommended for outpatient mental health treatment at this time." The trial court concluded the report provided insufficient information to find defendant had been restored to fitness. The court subsequently sent Griffin a letter requesting further evaluation of defendant and a report addressing issues related to defendant's fitness.

¶ 8        In a March 2017 report, Griffin wrote, in part, as follows:

    "[Defendant] is able to clearly state she has been charged
    with [b]attery. She demonstrates her understanding that this is a
    misdemeanor offense. She also appears to understand the court
    proceedings and can identify the different participants, their roles,

- 2 -

and functions during the proceedings. She is able to describe and explain what a plea consists of, a judgment, and a sentence. [Defendant] provided a detailed description of *** her interpretation of the alleged incident that led to her arrest and current charges. She identifies her [p]ublic [d]efender *** and she acknowledges that [she] has been uncooperative with him in the past interactions though she indicates that she would like to know all of the facts of the case to be able to better understand how to proceed with her attorney's assistance."

Defense counsel argued that, based on the March 2017 report and his own observation of defendant's behavior, the court should find defendant fit. In finding defendant fit, the court indicated it considered the reports, the factors in the fitness statute, and the court's own observation of defendant's demeanor, presence, speech, and manner of communication with her attorney.

¶ 9                                B. Jury Trial

¶ 10         In June 2017, the matter proceeded to trial, where the jurors heard the following evidence.

¶ 11                              1. *David Wills*

¶ 12         David Wills testified he was a security guard at Restoration Urban Ministry (Restoration), where defendant previously resided. On June 21, 2016, defendant drew Wills's attention because she appeared to be intoxicated. According to Wills, residents were not allowed to be under the influence or have drug activity while living at Restoration. Because defendant appeared to be intoxicated, Wills and Gladys Fancher asked her to leave the property for 24

hours.  Wills allowed defendant to gather some belongings from her room while he and Fancher waited outside.  According to Wills, defendant opened her door and angrily charged at him.  Wills testified defendant got close to him and sprayed him directly in the face and eyes with pepper spray.  Wills instantly felt a burning sensation and had difficulty breathing.  After Wills was sprayed with the pepper spray, he called 911.  The police arrived in approximately five minutes and provided Wills with wipes and water to counteract the pepper spray.  Wills testified he knocked defendant down after she sprayed him with pepper spray.

¶ 13                                    2. *Gladys Fancher*

¶ 14            Gladys Fancher testified she was a case manager and assistant housing director at Restoration.  On the afternoon of June 21, 2016, Fancher and Wills contacted defendant.  According to Fancher, defendant appeared intoxicated and was asked to leave the property.  Fancher testified she and Wills stood in the parking lot near defendant's door while she packed a bag.  When defendant exited her room, she had her hands behind her back.  According to Fancher, defendant ran up to Wills and sprayed him in the face with pepper spray.  Fancher testified Wills grabbed his face and rubbed his eyes and defendant turned toward Fancher and started spraying.  When asked where defendant sprayed her with pepper spray, Fancher testified, "Well, she was pointing it towards my face but the wind had already caught it and blew it back in my face, so I was rubbing my eyes.  I was coughing.  I was gasping for air because I couldn't breathe."  The police arrived within approximately seven minutes and provided wipes for the pepper spray.

¶ 15                                    3. *Jonathan Kristensen*

¶ 16            Jonathan Kristensen, an officer with the Champaign Police Department, testified that on June 21, 2016, he was dispatched for a report of a battery.  When Kristensen arrived at

Restoration, he observed defendant slurring her speech, and he detected the odor of an alcoholic beverage when she spoke. Kristensen also observed Wills, who appeared to have been exposed to the effects of pepper spray. Kristensen provided Wills with Sudecon wipes to help counteract the effect of pepper spray. According to Kristensen, Fancher had watery eyes, was blinking and wincing, and stated she had been pepper sprayed. Kristensen acknowledged his report documented that he provided Sudecon wipes to Wills but failed to mention providing wipes to Fancher.

¶ 17                                                4. *Verdict*

¶ 18          The jury found defendant guilty of battery by making contact of an insulting or provoking nature with Wills. However, the jury found defendant not guilty of battery by making insulting or provoking contact with Fancher.

¶ 19                                    C. Posttrial Proceedings

¶ 20          In July 2017, defense counsel filed a second motion for appointment of a psychiatrist. Defense counsel stated recent contact with defendant led him to doubt her fitness to proceed to sentencing and he believed defendant was unable to assist in her representation. Defense counsel requested that defendant be evaluated regarding her fitness to proceed to sentencing and that there be a retroactive evaluation of her fitness at trial. The trial court granted the motion and appointed Dr. Lo to conduct the requested evaluations.

¶ 21          In a September 2017 report, Dr. Lo concluded defendant was unfit to proceed to sentencing but was fit at the time of trial. Dr. Lo stated defendant currently suffered psychosis not otherwise specified and she made efforts to "dissimulate (appear to be less ill than she truly is)." Dr. Lo recommended defendant "obtain treatment in a facility where she can be intensively observed to clarify her diagnosis and need for treatment."

¶ 22　　　　The trial court held a hearing on defendant's fitness and found that she was fit at the time of trial. In so finding, the court considered Dr. Lo's report, the court's own observations of defendant during trial, and the previous reports from Rosecrance. The court noted defendant did not demonstrate any evidence of unfitness during her trial. However, the court found defendant unfit to proceed to sentencing. The court noted that in addition to Dr. Lo's report, defendant's appearance and demeanor were different from the trial and the court's observations were consistent with the expert opinions.

¶ 23　　　　The trial court ordered defendant be remanded into the custody of the Department of Human Services (DHS) for inpatient treatment. The court noted Dr. Lo opined defendant had further decompensated, her symptoms were more severe than in his prior evaluation, and the severity of her illness changed over time. Defendant pleaded with the court to not order inpatient treatment, stated she had a psychiatrist in Danville, and stated this happened because she refused to take a plea deal. Defendant further stated inpatient treatment would cause her to lose her housing and she should not have come to court.

¶ 24　　　　An October 2017 report from DHS stated defendant's evaluation demonstrated her need for inpatient treatment at McFarland Mental Health Center. The report estimated defendant's fitness would be restored within two months. A November 2017 report indicated defendant was fit to proceed to sentencing. The report stated defendant was aware of the charges against her, the class of offense, the possible sentence, and the next phase in her court process was sentencing. Defendant related her dissatisfaction with her attorney's use of the phrase "down and out" and she wanted her attorney to instead emphasize her good work history and relatively clean criminal record. However, defendant acknowledged " 'I've stayed with him [(defense counsel)] this far. I guess I should stay with him the rest of the way.' *** 'He's

supposed to work on my behalf.  We will get the best result if we are working together as a team.' ''  The report concluded defendant was fit because she had an "adequate understanding of necessary information related to criminal proceedings and the parties involved in them.  She [wa]s capable of cooperating appropriately in her defense and otherwise capable of behaving and cooperating in an appropriate, self-serving manner."

¶ 25  Following a December 2017 hearing, the trial court found defendant's fitness was restored and ordered her discharged from DHS custody.  The court noted its observations of defendant were consistent with her fitness being restored.  In making its findings, the court considered its own observations, the report from the experts, the relevant evidence, and the fitness statute.

¶ 26  That same month, the matter proceeded to a sentencing hearing.  Defendant testified she had a degree in economics and a master's degree in technology education.  Defendant also held a Mississippi teacher's license and a special education certificate from Eastern Illinois University.  Defendant served in the United States Air Force from approximately 1982 to about 1992 and in the Reserves until approximately 1998.  Defendant also worked for the Department of Children and Family Services, the Champaign School District, and the Urbana School District.

¶ 27  Defendant testified she became homeless and had some difficulties obtaining assistance with finding housing.  Eventually, defendant was able to secure housing in Danville through the Department of Veterans Affairs, which she was able to keep while she was in DHS custody.  Defendant testified her experience at McFarland was very educational.  According to defendant, she helped get patients to safety during a "Code Red" and remained with a distraught patient until DHS staff arrived.  Defendant used her own experiences and training to help some

patients.  For example, defendant taught a patient and staff members behavior modification techniques to help the patient learn "not to touch people."

¶ 28		The State recommended a sentence of 164 days in jail with 82 days of presentence credit.  Defense counsel argued defendant had no criminal history prior to the events that led to the current case and she had dedicated her life to serve, help, and educate other people.  Defense counsel recommended a sentence of court supervision.

¶ 29		The trial court considered the nature and circumstance of the offense, the presentence report, the mitigation evidence, and the recommendations of the attorneys.  In mitigation, the court emphasized defendant's lack of a prior criminal history, her education, and her "substantial experience in assisting other people and in service to the country."  The court noted defendant's character and attitude indicated she was likely to comply with a community-based sentence and was unlikely to commit further offenses.  Accordingly, the court concluded a sentence of 12 months' court supervision would best serve both defendant and the interests of the public.

¶ 30		This appeal followed.

¶ 31				II. ANALYSIS

¶ 32		OSAD seeks to withdraw as counsel on appeal, asserting it can make no meritorious argument that (1) the State failed to meet its burden of proving defendant guilty of battery beyond a reasonable doubt or (2) the trial court abused its discretion in sentencing defendant to 12 months' supervision.  For the following reasons, we agree and allow OSAD's motion to withdraw.

¶ 33				A. Sufficiency of the Evidence

¶ 34        A defendant may only be convicted upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which she is charged. *In re Winship*, 397 U.S. 358, 364 (1970). When determining the sufficiency of the evidence supporting a conviction, "our function is not to retry the defendant." *People v. Sutherland*, 223 Ill. 2d 187, 242, 860 N.E.2d 178, 217 (2006). Instead, we must resolve " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We allow all reasonable inferences in the light most favorable to the State. *People v. Beauchamp*, 241 Ill. 2d 1, 8, 944 N.E.2d 319, 323 (2011). It is the province of the finder of fact to determine the credibility of a witness, and the finding is entitled to great weight. *People v. Smith*, 185 Ill. 2d 532, 542, 708 N.E.2d 365, 370 (1999). We reverse only where the evidence is so unsatisfactory, unreasonable, or improbable that it raises a reasonable doubt as to the defendant's guilt. *People v. Evans*, 209 Ill. 2d 194, 209, 808 N.E.2d 939, 947 (2004).

¶ 35        Here, defendant was charged with two counts of battery for allegedly spraying Wills and Fancher with pepper spray. The jury found defendant guilty of the battery against Wills and acquitted her of the battery against Fancher. To sustain a conviction for battery, the State must prove defendant "knowingly without legal justification by any means *** ma[de] physical contact of an insulting or provoking nature" with Wills. 720 ILCS 5/12-3(a)(2) (West 2016). A person has knowledge when she is consciously aware that the result of her conduct is practically certain to be caused by her conduct. 720 ILCS 5/4-5(b) (West 2016).

¶ 36        At trial, Wills and Fancher testified defendant was asked to leave Restoration because she had been drinking in violation of Restoration's rules. Wills and Fancher testified

they waited outside while defendant went to her room to pack a bag for the night. Wills testified defendant exited her room, angrily ran up to him, and sprayed him in the face with pepper spray. Fancher testified defendant exited her room with her hands behind her back, ran up to Wills, and sprayed him in the face with pepper spray. Officer Kristensen testified he responded to the incident and observed that Wills appeared to be suffering from the effects of pepper spray. Wills testified his eyes and face burned and he had difficulty breathing. Kristensen testified Wills's eyes were red and watery and he provided Wills with Sudecon wipes to counteract the chemicals of pepper spray. Considering this evidence in the light most favorable to the State and giving proper deference to the trier of fact's credibility determination, we conclude the jury could have reasonably concluded defendant was guilty of battery. We therefore agree that no arguably meritorious basis exists upon which OSAD can challenge the sufficiency of the State's evidence.

¶ 37                                B. Excessive Sentence

¶ 38         A trial court's sentencing decision is given substantial deference. *People v. Snyder*, 2011 IL 111382, ¶ 36, 959 N.E.2d 656. A sentence within the statutory limits will be disturbed only where the trial court abused its discretion. *People v. Flores*, 404 Ill. App. 3d 155, 157, 935 N.E.2d 1151, 1154 (2010).

¶ 39         In December 2017, the trial court sentenced defendant to 12 months' court supervision. Defendant's conviction for a Class A misdemeanor battery carried a maximum sentence of "less than one year" in prison. 730 ILCS 5/5-4.5-55(a) (West 2016). However, in certain circumstances a sentence of court supervision may be imposed. 730 ILCS 5/5-4.5-70(a) (West 2016). Section 5-4.5-70(a) of the Unified Code of Corrections provides, in part, as follows:

"[T]he court may enter an order for supervision after considering the circumstances of the offense, and the history, character, and condition of the offender, if the court is of the opinion that:

(1) the defendant is not likely to commit further crimes;

(2) the defendant and the public would be best served if the defendant were not to receive a criminal record; and

(3) in the best interests of justice, an order of supervision is more appropriate than a sentence otherwise permitted under this Code." 730 ILCS 5/5-4.5-70(a) (West 2016).

A sentence of supervision must be reasonable and "may not be longer than 2 years." 730 ILCS 5/5-4.5-70(b) (West 2016).

¶ 40          Here, the trial court complied with the requirements for imposing a sentence of court supervision. The court expressly considered the nature and circumstances of the offense, the presentence report, the mitigation evidence, and the recommendations of the attorneys. In mitigation, the court emphasized defendant's lack of a prior criminal history, her education, and her "substantial experience in assisting other people and in service to the country." The court noted defendant's character and attitude indicated she was likely to comply with a community-based sentence and was unlikely to commit further offenses. Finally, the court concluded a sentence of 12 months' court supervision would best serve both defendant and the interests of the public.

¶ 41          We agree with OSAD that no meritorious argument can be made that the trial court abused its discretion where it sentenced defendant to a statutorily authorized sentence of 12

months' supervision after making the necessary findings. We therefore grant OSAD's motion to withdraw as counsel on appeal and affirm the judgment of the trial court.

¶ 42                              III. CONCLUSION

¶ 43          For the reasons stated, we affirm the trial court's judgment.

¶ 44          Affirmed.