2018 IL App (2d) 150966
No. 2-15-0966
Opinion filed February 5, 2018

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 12-CM-2776 |
| HILARIO ESPINO-JUAREZ, | ) ) ) | Honorable Bruce R. Kelsey, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SPENCE delivered the judgment of the court, with opinion.
Justices Jorgensen and Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a bench trial, defendant, Hilario Espino-Juarez, was convicted of obstructing identification (720 ILCS 5/31-4.5(a)(3) (West 2012)) for giving a false name to an officer who had good cause to believe that defendant was a witness to a crime. He appeals, contending that the State did not prove beyond a reasonable doubt that (1) the officer had good cause to believe that defendant had witnessed a crime or, in the alternative, that (2) defendant understood the officer's questions and thus acted with the requisite mental state. We reverse.

¶ 2    At trial, Du Page County deputy sheriff Brian Roake testified that he was dispatched to investigate a three-car traffic accident on July 8, 2012. At that time, he was a Warrenville police officer. He observed that three cars were involved in a property-damage-only accident. He

approached the driver of one of the cars, a Chevrolet. The driver identified himself as Jose Romero. Romero, "through translation," identified the front-seat passenger as Jose Chavez. Roake returned to his patrol car and ran the names of all those involved in the accident through the Law Enforcement Agencies Data System (LEADS). As he did so, he discovered a failure-to-appear warrant for Jose Chavez, as an alias for "Hilario Espino."

¶ 3    Roake returned to the Chevrolet and asked the front-seat passenger, whom he identified as defendant, if his name was Jose Chavez. Defendant nodded. Roake asked him if he was sure that his name was not Hilario Espino. Defendant denied that his name was Espino. Roake explained that defendant could face additional charges if he was, in fact, Hilario Espino, but defendant continued to maintain that his name was Chavez.

¶ 4    Defendant seemed nervous, but Roake was able to converse "partially" with him in broken English. Defendant's answers were appropriate to the questions. Roake went back to Romero and asked him if the person he initially identified as Chavez also went by the name Hilario. Romero said that he did.

¶ 5    Roake arrested defendant and took him to the station for booking. There, defendant signed a bond receipt and a property-intake form with the name Hilario Espino.

¶ 6    On cross-examination, Roake said that a woman named Linda Loveless, driving a Lincoln, appeared to be "at fault" for the accident, having rear-ended Romero's car. Roake testified that he was not investigating driving under the influence (DUI) or reckless driving. At least initially, he was not investigating defendant at all. Roake did not ask defendant his mother's maiden name or his father's surname. He did not issue Loveless a citation.

¶ 7 On redirect examination, Roake testified that it was important to speak to the passengers because "they could have been injured, and they are witnesses and could further be involved in civil litigation involved with that accident."

¶ 8 The trial court found defendant guilty and ordered him to pay $419 in fines and costs. Defendant timely appeals.

¶ 9 Defendant was charged under section 31-4.5(a) of the Criminal Code of 2012, which provides as follows:

> "(a) A person commits the offense of obstructing identification when he or she intentionally or knowingly furnishes a false or fictitious name, residence address, or date of birth to a peace officer who has:
>
> > (1) lawfully arrested the person;
> >
> > (2) lawfully detained the person; or
> >
> > (3) requested the information from a person that the peace officer has good cause to believe is a witness to a criminal offense." 720 ILCS 5/31-4.5(a) (West 2012).

¶ 10 Although the complaint did not specify under which subsection defendant was charged, the trial court found that only subsection (a)(3) applied. On appeal, the State does not argue otherwise. Thus, we confine our analysis to subsection (a)(3).

¶ 11 Where a defendant challenges on appeal the sufficiency of the evidence, we ask whether, after viewing all the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011). Due process requires that the State prove a defendant guilty

beyond a reasonable doubt of every element of the offense. *People v. Miles*, 344 Ill. App. 3d 315, 318 (2003) (citing *In re Winship*, 397 U.S. 358, 364 (1970)).

¶ 12    The parties have not cited, and our research has not uncovered, any published decision interpreting section 31-4.5(a). The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *People v. McClure*, 218 Ill. 2d 375, 381-82 (2006). The best evidence of legislative intent is the language of the statute. *Id.* at 382. Where possible, the court should interpret the language of the statute according to its plain and ordinary meaning. *Id.*

¶ 13    The statute, by its plain language, applies only to one whom an officer "has good cause to believe is a witness to a criminal offense." 720 ILCS 5/31-4.5(a)(3) (West 2012). As the State concedes, "good cause" must be the functional equivalent of "probable cause." Probable cause exists when the facts and circumstances known to the officer are sufficient to warrant a reasonable belief that a crime has been committed. *People v. Gherna*, 203 Ill. 2d 165, 176 (2003). Further, in the statute, "has" is in the present tense. Thus, for a defendant to be guilty under subsection (a)(3), the officer must have, *at the time that he requests identification*, probable cause to believe that the defendant is a witness to a crime. It is not enough to speculate that the officer's investigation might subsequently reveal that a crime has been committed.

¶ 14    Defendant argues that, by this standard, the State did not prove him guilty beyond a reasonable doubt. We agree.

¶ 15    We acknowledge that, as to whether probable cause exists, an officer's subjective intention is irrelevant as long as the requisite showing can be inferred from objective circumstances. See *People v. Wear*, 229 Ill. 2d 545, 566-67 (2008). Nevertheless, we observe that Roake himself did not think that defendant was a witness to a crime. Although Roake testified that he thought that Loveless was "at fault" for the accident—at least in the sense that

she had rear-ended Romero's vehicle—he did not think that he was investigating an incidence of DUI or reckless driving. He did not issue a traffic citation to Loveless or to anyone else. When specifically asked on redirect, he said that he wanted to talk to defendant only because the witnesses "could further be involved in *civil* litigation involved with that accident." (Emphasis added.) Thus, when he asked for defendant's identification, he did not believe that defendant had witnessed a crime.

¶ 16 And indeed, he knew no objective facts to reasonably support such a belief. The State observes that traffic offenses, such as failing to reduce speed and following too closely, are considered criminal violations for at least some purposes. See 625 ILCS 5/6-308 (West 2014). The State further observes that, when faced with evidence of a traffic offense, an officer may exercise his discretion not to issue a citation. However, Roake knew only that Loveless had rear-ended Romero's car; he knew no additional facts—or at least he testified to none—to support an inference that she had done so because she had failed to reduce speed or followed too closely. See *Thomas v. Northington*, 134 Ill. App. 3d 141, 145 (1985) (" 'A rear-end collision does not automatically create an inference as a matter of law that the driver of the rear [vehicle] was negligent or that he was following too closely or driving too fast for conditions.' " (quoting *Burgdorff v. International Business Machines Corp.*, 74 Ill. App. 3d 158, 163 (1979))).

¶ 17 The State also notes that an officer investigating a traffic accident is required to file a detailed report with the Department of Transportation and the Secretary of State and has a responsibility toward public safety. *People v. Stremming*, 167 Ill. App. 3d 578, 580-81 (1988). In discharging this latter duty, the officer "must determine how best to give aid to injured citizens, protect those nearby from further danger, and regulate traffic." *Id.* at 582. But these facts are irrelevant. Section 31-4.5(a)(3) applies only when an officer has "good cause to believe

[that the defendant] is a witness to a criminal offense." 720 ILCS 5/31-4.5(a)(3) (West 2012). Simply because an officer must file a report and protect public safety does not mean that a crime has been committed.

¶ 18    Thus, we agree with defendant that the State failed to prove that, when Roake asked him for his identification, Roake had good cause to believe that he had witnessed a crime. Because we reverse defendant's conviction on this basis, we do not consider his alternative argument.

¶ 19    The judgment of the circuit court of Du Page County is reversed.

¶ 20    Reversed.