2018 IL App (2d) 160577
No. 2-16-0577
Opinion filed December 14, 2018

_____

IN THE
APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Carroll County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CM-211 |
| ANTHONY J. MAPLES, | ) ) ) | Honorable John F. Joyce, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SPENCE delivered the judgment of the court, with opinion.
Justices Jorgensen and Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant, Anthony J. Maples, appeals from the judgment of the circuit court of Carroll County finding him guilty of tattooing the body of a minor (720 ILCS 5/12C-35(a) (West 2014)). Because the State was not required to prove that defendant did not have a medical license and the evidence established that defendant knew that the victim was under 18 years old, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3     Defendant was charged by information with one count of tattooing the body of a minor (720 ILCS 5/12C-35(a) (West 2014)). Following a bench trial, defendant was found guilty and sentenced to 30 days in jail.

¶ 4     The following facts were established at defendant's trial. In late July or early August 2015, the victim, L.L., met defendant and stayed with him for several weeks at his apartment in Savanna. According to L.L., during that time, defendant gave her five tattoos. When asked if defendant told her that he was licensed to give tattoos, L.L. answered yes. L.L. added that Earl Rogers and two others were present when defendant gave her a tattoo.

¶ 5     The prosecutor asked L.L. whether "at any point that [she] knew [defendant]" she told him how old she was. L.L. answered yes, that she told him she was 17 years old. On cross-examination, defense counsel asked L.L. if her testimony was that she told defendant that she was 17, and L.L. answered yes.

¶ 6     L.L.'s mother testified that she had never given anyone permission to tattoo L.L.

¶ 7     Lieutenant Dan Nevills of the Savanna Police Department interviewed L.L. He observed several tattoos on L.L., and she told him that she had several that he could not see.

¶ 8     After the State rested, defendant moved for a directed finding, contending only that the State had not offered any evidence that L.L. had any tattoos. The trial court denied the motion.

¶ 9     Defendant then sought a continuance to subpoena Rogers, who had not been disclosed before L.L.'s testimony. In granting the motion to continue, the trial court commented that, because it was allowing defendant a continuance to subpoena Rogers, it would allow either party to subpoena the other two possible witnesses identified by L.L.

¶ 10    When the trial resumed, defendant noted that, because the trial court had given both parties leave to subpoena witnesses, the State should proceed first. When the trial court asked the State if it had any evidence in addition to the previous testimony, the State asked to recall L.L. Defendant did not object, and the court granted the State's request.

¶ 11　The State asked L.L. if she was "aware if [defendant] at anytime had a degree or license to practice medicine," to which she answered no. When the State asked L.L. to show the trial court a tattoo on her hand, defendant objected, noting that the court had allowed a continuance for the sole purpose of obtaining the testimony of undisclosed witnesses and that the State could not "redo [its] case." The court commented that it did not "interpret [its ruling] that way" and that L.L. had previously testified that she had a tattoo.

¶ 12　After the State rested, defendant again moved for a directed finding, contending only that the State had not proved either that L.L. had any tattoos or that defendant was not licensed to practice medicine. Defendant did not argue that the evidence was insufficient to prove that defendant knew that L.L. was under the age of 18 when he tattooed L.L. The trial court denied the motion.

¶ 13　Rogers then testified for the defense. According to Rogers, he had never seen defendant give L.L. a tattoo. Rogers admitted, however, to having seen tattoos on L.L.

¶ 14　During closing argument, the State maintained that whether defendant had a license to practice medicine was "more of an affirmative defense" and that defendant was required to show that he was licensed to practice medicine. Defendant countered that whether he was licensed to practice medicine was not an affirmative defense and that he did not have the burden to prove that he was licensed. Again, defendant did not contend that the evidence did not prove that he knew that L.L. was a minor when he tattooed her.

¶ 15　In finding that L.L. had tattoos, the trial court noted that L.L. testified that defendant had tattooed her, that L.L. showed the court a tattoo on her hand, and that Lieutenant Nevills saw tattoos on L.L. The court also found that L.L. was 17 years old and that her mother had not given defendant permission to tattoo L.L. In finding that the State had proved its case, the court

noted that, although the State did "not present evidence *per se* that [defendant did] not have a medical degree," L.L. had testified that she did not know of any medical degree possessed by defendant. Thus, the court found defendant guilty.

¶ 16 Defendant filed a motion for a new trial. He contended that, among other things, because the continuance was for the limited purpose of additional witnesses, the trial court improperly considered L.L.'s additional testimony, particularly as to whether defendant had a medical license. In denying the motion for a new trial, the trial court stated that, even though there was a question as to whether the State properly presented additional testimony from L.L. at the continued trial, the State had "already proven its case even before that." After sentencing, defendant filed a timely notice of appeal.

¶ 17                                    II. ANALYSIS

¶ 18 On appeal, defendant contends that the State failed to prove beyond a reasonable doubt that (1) he was not licensed to practice medicine and (2) he knowingly tattooed a person under the age of 18. For the following reasons, we reject both contentions.

¶ 19 We first address defendant's contention that the State failed to prove beyond a reasonable doubt that he was not licensed to practice medicine. We disagree, as the State was not required to do so.

¶ 20 "It is well established that, where an act is made criminal with exceptions embraced in the enacting clause creating the offense, so as to be descriptive of it, the State must allege and prove that the defendant is not within the exceptions so as to show that the precise crime has been committed." *People v. Fiumetto*, 2018 IL App (2d) 170230, ¶ 13 (citing *People v. Tolbert*, 2016 IL 117846, ¶ 14). In other words, "where the exception is descriptive of the offense, it must be charged and negatived." *Fiumetto*, 2018 IL App (2d) 170230, ¶ 13. "Whether the

exception is in the same section as the offense or in a separate section is not dispositive." *Fiumetto*, 2018 IL App (2d) 170230, ¶ 13. "Instead, a court must determine more generally whether the legislature intended the exception to be descriptive of the offense or whether it intended only to withdraw, or except, certain persons or acts from the operation of the statute." *Fiumetto*, 2018 IL App (2d) 170230, ¶ 13. "Those latter exceptions are generally matters of defense." *Fiumetto*, 2018 IL App (2d) 170230, ¶ 13.

¶ 21 The cardinal rule of statutory construction is to ascertain and effectuate the legislative intent. *People v. Espino-Juarez*, 2018 IL App (2d) 150966, ¶ 12. The best indication of legislative intent is the plain language of the statute. *Espino-Juarez*, 2018 IL App (2d) 150966, ¶ 12. Indeed, where possible, a court should interpret the statutory language according to its plain and ordinary meaning. *Espino-Juarez*, 2018 IL App (2d) 150966, ¶ 12.

¶ 22 Here, we must decide whether the legislature intended the language in section 12C-35(a) of the Criminal Code of 2012 (720 ILCS 5/12C-35(a) (West 2014)), excepting persons licensed to practice medicine, to describe the offense or merely to withdraw certain persons from criminal liability. It is the latter.

¶ 23 Section 12C-35(a) provides, in pertinent part, that a "person, other than a person licensed to practice medicine ***, commits tattooing the body of a minor when he or she knowingly *** tattoos *** a person under the age of 18." 720 ILCS 5/12C-35(a) (West 2014). The plain language of section 12C-35(a) excepts from liability any person who is licensed to practice medicine. In doing so, it categorically withdraws from liability certain persons (those licensed to practice medicine). Further, the mere placement of the exception within the section defining the offense does not alone show any intent to make the language descriptive of the offense. See *Fiumetto*, 2018 IL App (2d) 170230, ¶ 17. By withdrawing from liability persons licensed to

practice medicine, the legislature unequivocally intended to create an exception to, as opposed to a description of, the offense. See *Fiumetto*, 2018 IL App (2d) 170230, ¶ 13.

¶ 24 As we noted in *Fiumetto*, two appellate court cases, in interpreting a former version of the Hypodermic Syringes and Needles Act (720 ILCS 635/1 *et seq.* (West 2016)), have held that the persons excepted from liability, including licensed physicians, were exceptions to, as opposed to descriptions of, the offense. *Fiumetto*, 2018 IL App (2d) 170230, ¶ 18 (citing *People v. Miller*, 30 Ill. App. 3d 643 (1975), and *People v. Harper*, 35 Ill. App. 2d 247 (1962)). Because those cases held that the language regarding licensed physicians constituted an exception to the offense, they further support our conclusion that the similar language in section 12C-35(a) constitutes an exception to liability for tattooing a minor.

¶ 25 Our conclusion is further bolstered by our decision in *People v. Rodgers*, 322 Ill. App. 3d 199 (2001). In *Rodgers*, we were asked to decide whether language in section 6-303(a) of the Illinois Vehicle Code (625 ILCS 5/6-303(a) (West 1998)) that prohibited driving with a revoked driver's license, except as allowed by, among other things, a restricted driving permit issued by another state, was an exception to liability or a description of the offense. *Rodgers*, 322 Ill. App. 3d at 200. Applying *People v. Ellis*, 71 Ill. App. 3d 719 (1979) (virtually identical issue), we held that the language constituted an exception to, as opposed to a description of, the offense. *Rodgers*, 322 Ill. App. 3d at 203. In doing so, we explained that, because driving while one's license is revoked is generally a criminal act that does not depend on the inapplicability of the exception, the exception did not bear on the elements of the offense. *Rodgers*, 322 Ill. App. 3d at 203. Thus, the State was not required to prove that a defendant did not have a restricted driving permit from another state. *Rodgers*, 322 Ill. App. 3d at 203.

¶ 26    As in *Rodgers*, the offense of tattooing a minor is generally a criminal act that does not depend on the inapplicability of the exception for a person licensed to practice medicine. Accordingly, the exception does not bear on the elements of the offense and thus need not be disproved by the State.

¶ 27    Although defendant relies on *People v. Laubscher*, 183 Ill. 2d 330 (1998), that reliance is misplaced. The issue in *Laubscher* was whether the State proved that the defendant, who was charged with the unlawful use of a weapon, was on his own land. *Laubscher*, 183 Ill. 2d at 332-33. In deciding that issue, the supreme court merely mentioned that, when an exception appears as part of the body of a substantive offense, the State bears the burden of disproving the exception. *Laubscher*, 183 Ill. 2d at 335. The issue of whether the language regarding a defendant being on his own land constituted an exception to or a description of the offense was not before the court. Moreover, the phrase "except when on his land" (720 ILCS 5/24-1(a)(4) (West 1994)), unlike the language here, did not withdraw certain persons from liability. Rather, it described the offense of unlawful use of a weapon. See *Rodgers*, 322 Ill. App. 3d at 202-03 (distinguishing *Laubscher*). Thus, *Laubscher* does not support defendant.

¶ 28    Because the language regarding a person licensed to practice medicine was an exception to, as opposed to a description of, the offense of tattooing a minor, the State was not required to prove that defendant did not have such a license.

¶ 29    We decide next whether the State proved beyond a reasonable doubt that defendant knew that L.L. was under the age of 18 when he tattooed her. It did.

¶ 30    When we review the sufficiency of the evidence, the standard is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt the essential elements of the offense. *People v. Jasoni*, 2012 IL App

(2d) 110217, ¶ 19. In making that determination, we will not substitute our judgment for that of the trier of fact on the weight of the evidence or the credibility of the witnesses. *Jasoni*, 2012 IL App (2d) 110217, ¶ 19. A conviction based on circumstantial evidence "must rest on proof of a conclusive nature that tends to lead to a satisfactory conclusion and produces a reasonable and moral certainty" that the defendant is guilty. *Jasoni*, 2012 IL App (2d) 110217, ¶ 19. This court will not disturb a guilty finding unless the evidence is so improbable or unsatisfactory that it raises a reasonable doubt as to the defendant's guilt. *Jasoni*, 2012 IL App (2d) 110217, ¶ 19.

¶ 31    "Knowledge is often proven by circumstantial evidence." *Jasoni*, 2012 IL App (2d) 110217, ¶ 20. Thus, an admission by a defendant is not required for the trier of fact to conclude that a defendant knew a victim's age. *Jasoni*, 2012 IL App (2d) 110217, ¶ 20.

¶ 32    In this case, the evidence established that L.L. met defendant in late July or early August 2015 and stayed with him for several weeks. During that time, defendant gave L.L. several tattoos. With that context established, the prosecutor asked L.L. if she had told defendant "at any point" how old she was. L.L. answered that she had told defendant that she was 17. On cross-examination, she reiterated that she had told defendant that she was 17. Although L.L. was never asked to specify that she told defendant her age *before he tattooed her*, her testimony, when viewed in its context and in the light most favorable to the State, was sufficient to sustain the inference that she did. See *People v. Davison*, 233 Ill. 2d 30, 43 (2009) ("a reviewing court must allow all reasonable inferences from the record in favor of the prosecution"). Thus, the evidence was sufficient to prove defendant guilty beyond a reasonable doubt of the offense of tattooing a minor.[1]

---

[1] Although the trial court found merely that L.L. was 17 and never expressly found that defendant knew her age when he tattooed her, we may affirm on any basis in the record. See

¶ 33                                    III. CONCLUSION

¶ 34    For the reasons stated, we affirm the judgment of the circuit court of Carroll County.  As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal.  55 ILCS 5/4-2002(a) (West 2016); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 35    Affirmed.

---

*People v. Sanchez*, ¶ 27; see also *In re Christopher O.*, 2011 IL App (2d) 101297-U, ¶ 25 ("No requirement exists that a court make an express finding as to every element.").